[S. F. No. 7563.   In Bank.—May 31, 1919.]

## HORACE G. RICHMAN, Respondent, v. SAN FRANCISCO, NAPA AND CALISTOGA RAILWAY (a Corporation), Appellant.

[1] APPEAL — JUDGMENT — PARTIAL ASSIGNMENT TO COUNSEL — COMPROMISE WITHOUT KNOWLEDGE—RIGHT TO PROSECUTE APPEAL.—An appeal from a judgment and order denying a new trial in an action for damages for personal injuries will not be dismissed on the ground that the controversy had been compromised, where the compromise was made by the parties themselves and without the consent of respondent's counsel, who held an assignment of an undivided one-half interest in the judgment, and the appellant had notice of the assignment prior to the compromise.

[2] NEGLIGENCE—INJURY TO TRAIN CONDUCTOR—TIME OF COLLISION—EVIDENCE—STOPPING OF WATCH OF PASSENGER.—In an action to recover damages for personal injuries alleged to have been sustained by a conductor in a railroad wreck when two trains of the defendant company collided, the admission of testimony concerning the stopping of the watch of one of the passengers on the wrecked train, for the purpose of showing the time of the collision, was not error.

[3] ID.—EVIDENCE—EFFECT OF SYPHILIS—LIMITATION OF REDIRECT EXAMINATION.—In such action, where a witness called by the defendant had already gone into the general subject of syphilis and its effects exhaustively on direct examination, it cannot be held that a refusal by the court on redirect examination to allow further testimony concerning the effect of syphilis constituted error, even though the inquiry was relevant and the question properly framed.

[4] ID.—FUTURE DAMAGES—ERRONEOUS INSTRUCTION—USE OF PHRASE "REASONABLY PROBABLE."—In such action, an instruction that if the jury should find that the plaintiff's injuries are permanent and will to some extent disable him in the future and cause him pain and suffering hereafter he should be allowed such further sum, as paid now in advance, will reasonably compensate him for such further disability, pain, and suffering, as the evidence shows is "reasonably probable" will result to him in the future, not to exceed in all the amount alleged in the complaint, is erroneous, since the use of the expression "reasonably probable" might well have led the jury to believe it would be proper to allow damages for suffering or other injury which the jury believed the plaintiff would *probably* suffer in the future, instead of for such suffering and injury as they believed were *certain* to result.

[5] ID.—MISCONDUCT OF COURT—COMMENT UPON WIFE'S TESTIMONY—PHYSICAL CONDITION OF PLAINTIFF — ADMONITION TO JURY — LACK

OF PREJUDICE.—In such action, a remark of the court addressed to counsel in the presence of the jury that he would rather take the wife's testimony concerning the physical condition of the plaintiff than all the physicians in the world, was improper, but without prejudice, where the jury was admonished not to consider for any purpose any comments of the court made to counsel during the trial upon testimony or the relative weight of the testimony of any witness.

[6] ID.—INTERPRETATION OF RULES OF DEFENDANT — RELATIVE DUTIES OF PLAINTIFF AND TRAIN-DISPATCHER — EVIDENCE — OPINIONS AND CONCLUSIONS OF WITNESSES.—In such action, the admission of opinions and conclusions of certain witnesses in the interpretation of the printed operating rules of the defendant, the application of the rules, the duty of the train-dispatcher under the rules, the priority of one rule over another, as to which of two trains was superior, and the relative duties of the plaintiff and train-dispatcher, was prejudicially erroneous, since if the rules required elucidation, it was the duty of the court to interpret them.

APPEAL from a judgment of the Superior Court of Napa County, and from an order denying a new trial. Henry C. Gesford, Judge. Reversed.

The facts are stated in the opinion of the court.

Myrick & Deering, John T. York and James Walter Scott for Appellant.

Theodore A. Bell and E. S. Bell for Respondent.

LAWLOR, J.—This is an action brought to recover damages for personal injuries alleged to have been sustained by plaintiff in a railroad wreck, when two trains of the defendant company collided between Collins and Hatch, stations situated on the line of its railroad, in Napa County. The jury found a verdict for plaintiff in the sum of fifteen thousand dollars. The defendant has appealed from the judgment entered thereon, and from an order denying a new trial.

Before considering the points relied upon for a reversal of the judgment and the order denying a new trial we will dispose of the motion to dismiss the appeal. The motion was made on the ground that the controversy having been compromised, the questions presented were moot. After judgment the plaintiff assigned an undivided one-half interest therein to his attorney, E. S. Bell. It appeared that before

the opening brief of the appellant was filed an agreement to compromise the controversy was entered into between the parties, James Irvine, the president of the company, representing the defendant, without the participation of its counsel, and the plaintiff acting for himself, without the consent of his counsel, and satisfaction of judgment was accordingly entered in the office of the county clerk of Napa County. Mr. Bell thereupon brought an action to vacate and set aside the satisfaction of judgment so far as it related to his undivided one-half interest. Plaintiff and the defendant company were both made parties to the suit, and upon the trial it was decreed that Bell was the owner of the interest claimed, the satisfaction of judgment was annulled and set aside, and the judgment was thereupon restored and entered by the clerk in favor of Bell against defendant, in the sum of $7,658.25. This action, resulting in favor of Bell, was based upon the fact that notice of the assignment had been given to representatives of the defendant company prior to the settlement with plaintiff. The trial court found that the defendant company had such notice, and that it wrongfully conspired with the plaintiff to cheat and defraud Bell of his interest in the judgment. No appeal was taken from this judgment and it has become final. It is apparent from the foregoing that there is no compromise as to half of the judgment at least, and the case is not moot. [1] The motion to dismiss the appeal on the ground of a compromise, therefore, cannot be sustained.

The defendant is a common carrier of passengers and freight, and operates a single line electric railway between the towns of Vallejo and Calistoga. For the purpose of controlling the movement of its trains the company employs train-dispatchers at its depot at Napa City and maintains a telephone line connecting with all its main stations, including Vallejo and Collins. On the morning of June 19, 1913, plaintiff was operating one of defendant's trains in the capacity of conductor. His train was known as No. 6 and was due to leave Vallejo at about 9 o'clock, and to arrive at Collins some sixteen minutes later. At this station, according to schedule, train No. 6 was to meet train No. 5, southbound. This latter train reached Collins on schedule time, but No. 6 was late. The conductor of No. 5 called up the train-dispatcher from Collins and asked for orders. He was directed to take orders, and after the dispatcher called up the agent at

Vallejo, and ascertained that No. 6 was still there, received orders to meet No. 6 at Hatch. The latter train started for Collins, and at a point south thereof the two trains met in a head-on collision, were telescoped, thirteen persons were killed, and many others were injured, among whom was the plaintiff. The cause of action was based upon the claim that the company was responsible for the collision because the dispatcher ordered train No. 5 out of Collins without first giving notice to train No. 6. The company contended that the plaintiff was not entitled to recover because he took train No. 6 out of Vallejo without first calling up the dispatcher. The other facts pertinent to this appeal will appear in the discussion of the points relied upon for reversal. There are many assignments of error, but for the purposes of this opinion it will not be necessary to mention all of them.

[2] 1. The admission of testimony concerning the stopping of the watch of Tracy Fay, one of the passengers on the wrecked train, for the purpose of showing the time of the collision, is assigned as error. This testimony was to the effect that the witness discovered that when he returned to the scene of the accident at noon, his watch had stopped at 9:30 A. M. We think criticism might more properly be addressed to the weight than to the admissibility of the testimony. The testimony was relevant for the purpose and it was for the jury to determine the weight to be given to it. Moreover, we do not perceive that the exact time of the collision had any particular materiality.

[3] 2. Appellant assigns error to the refusal by the court to allow certain testimony concerning the effect of syphilis. It was claimed by appellant that plaintiff had been a syphilitic since he was fourteen years of age. Dr. W. G. Alvarez, called by the defendant, testified at great length as to the effect of this disease on the mind and body. When being examined on redirect, the following occurred:

"Q. Would you consider it safe, for example, to have in your employment an elevatorman, or to have in your employ a locomotive engineer, who had syphilis for some long period of time?

"Mr. Bell.—We object to it as incompetent, irrelevant, immaterial, and not proper redirect.

"The Court: Sustained."

The witness had already gone into the general subject of syphilis and its effects so exhaustively that we cannot say that the ruling was erroneous, even though the inquiry was relevant and the question properly framed.

[4] 3. Error is assigned because of the following remark by the court with regard to the testimony of the wife of plaintiff concerning his physical condition: "I think a wife can beat all the physicians on earth telling about the peculiar conditions of her husband. I would rather take the wife's testimony than all the physicians as to the physical condition of her husband." This remark was addressed to counsel in the presence of the jury touching a question of fact, and of course should not have been made. But we think that any prejudicial effect the remark may have caused at the time was cured by an admonitory instruction, that "You will not consider for any purpose in this case . . . any comments of the court made to counsel during the trial upon testimony, or the relative weight of the testimony of any witness, or of any class of witnesses. . . . "

4. An exception was taken to an instruction of the court upon future damages, the portion objected to reading as follows: "If you further find that the plaintiff's injuries are permanent and will to some extent disable him in the future and cause him pain and suffering hereafter you should also allow him such further sum, as paid now in advance, will reasonably compensate him for such further disability, pain, and suffering as the evidence shows is reasonably probable will result to him in the future, not to exceed in all the amount alleged in plaintiff's complaint." It is urged in support of the objection that the court committed prejudicial error by the use of the phrase in the instruction—"reasonably probable will result" in contravention of section 3283 of the Civil Code, which reads: "Damages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or certain to result in the future." The question of damages for future detriment was gone into at great length at the trial and the record shows that the defendant was entitled to have the jury instructed on the subject. It was testified by plaintiff and his wife that because of the injuries to the head and back and the leg of the plaintiff he would be incapacitated in the future; that his memory was no longer reliable; that at times his mind becomes blank and

that he cannot think connectedly; that he is affected by dizziness, is deprived of sufficient sleep and suffers continually from headache; that he has lost his hearing on the left side, and that the slightest jar to the head causes the blood to rush to it.

The meaning of section 3283 of the Civil Code, has been considered in a number of cases. In *Melone* v. *Sierra Ry. Co.,* 151 Cal. 113, [91 Pac. 522], an instruction was given to the jury that an element of damage was "such reasonable sum as the jury shall award him on account of the pain and anxiety that he has suffered or *may suffer* by' reason of his injuries," and further that "in estimating the damages to be awarded you may take into consideration . . . how far his injuries are permanent in their character and results, as well as the physical and mental suffering he may have sustained, or *may undergo in the future* by reason of the injuries." The court said: "These instructions were erroneous in permitting the jury to estimate prospective damages upon what they believed might be the plaintiff's future suffering. . . . It is true that in a succeeding instruction the court declared that plaintiff was entitled to recover not only such damages as he may have suffered, but also 'such damages as by the evidence it is reasonably certain he will suffer in the future.' Herein is a declaration of the true rule, but none the less the instructions upon the matter are conflicting, and it cannot be said by which the jury was guided."

The phrase "reasonably probable" was used in an instruction considered in *Hersperger* v. *Pacific Lumber Co.,* 4 Cal. App. 460, [88 Pac. 587, 591]. The instruction is as follows: "In this action the plaintiff if he has shown himself entitled to recover, is entitled to recover for all damages which he has suffered up to the time of the trial, and for all damages that it is *reasonably probable* that he will sustain in the future, not exceeding the sum claimed in the complaint. In estimating the compensatory damages in cases of this character, all the consequences of the injury, future as well as past, are to be taken into consideration, including the bodily and physical pain and suffering which is shown by the proof to be *reasonably certain* to have naturally resulted from the injury." The court said: "The mere reading of the whole instruction is sufficient to show there is no error in it." That case is cited with approval in *Lonnergan* v. *Stansbury,* 164

Cal. 488, [129 Pac. 770], the court holding that the instructions given in both cases were identical. The court further declared: "The phrase 'reasonably probable' may well be omitted from all such instructions and the statutory requirement of the Civil Code (section 3283) strictly adhered to. But the instruction here in question, while using the unhappy phrase 'reasonably probable,' sums up its declaration of the law with the pronouncement of the correct rule." In other words, the two phrases "reasonably probable" and "reasonably certain" were both used, and the error in the former was cured by the latter. In the recent case of *Wiley* v. *Young*, 178 Cal. 681, [174 Pac. 316], it was held upon the authority of *Melone* v. *Sierra Ry. Co.*, *supra*, that the expression "reasonably certain to result" is in accord with section 3283. The term "reasonably probable" was not used in *Wiley* v. *Young*, *supra*.

The instruction before us was given by the court of its own motion and the basis of the award of future damages is not touched upon elsewhere in the charge, nor in any instruction proposed by either of the parties.

[5] The use of the expression "reasonably probable" was clearly erroneous, and might well have led the jury to believe it would be proper to allow damages for suffering or other injury which they believed the plaintiff would *probably* suffer in the future, instead of for such suffering and injury as they believed were *certain* to result. So much is left to the discretion of the jury in the determination of the amount of damages in cases of this character that it is of great importance that their attention should be called particularly to the basis upon which, and upon which only, an award must be founded for future detriment.

The respondent concedes that the phrase, "reasonably probable" does not literally comply with section 3283, but urges that the defect is cured by another instruction which the court gave: "I instruct you that if plaintiff is entitled to recover, the measure of his recovery is what is termed compensatory damages; that is, such sum as will compensate him for the injuries he has *sustained.*" *Stein* v. *United Railroads*, 159 Cal. 368, [113 Pac. 663], is cited in support of this contention. But that case uses language which expresses the view that the word "sustained" does not refer to future injury. It was said: "True, if the sentence stood

alone it might be open to the objection urged against it, but
its vice is nullified by the very next sentence which limits
the jury's award *to the injury 'sustained'—not to a future,
contingent injury.''*   (Italics ours.)   It will not be neces-
sary to consider this point further or to appraise the gravity
of the error in view of the conclusion we have reached on the
next point.

5. The court, over objection, admitted the opinions and
conclusions of certain witnesses in the interpretation of the
printed operating rules of the company, the application of
the rules, the duty of the train-dispatcher under the rules,
the priority of one rule over another, as to which of two
trains was superior, and the relative duties of the plaintiff
and the train-dispatcher.   This, appellant claims, was pre-
judicially erroneous and constituted an invasion of the pro-
vince of both the trial court and of the jury.   It is to be
kept in mind that train No. 6 was at Vallejo awaiting the
arrival of the boat of the Monticello Steamship Company to
take on its passengers.   The boat, as frequently happened,
was late.   No. 6 was due under time-table schedule to leave
Vallejo at 9:02 A. M. and to arrive at Collins at 9:18 A. M.,
where it was to meet No. 5.   The latter train arrived at the
meeting point on schedule time.   No. 6 not being in sight,
B. E. Patten, the conductor of No. 5, called up the dispatcher
at Napa and was told to take an order.   The order given was
to meet No. 6 at Hatch.   Three minutes later No. 5 started
for the latter point, and when about one and one-half miles
south of Collins the trains collided.

In the controversy over the question of liability, rules 268,
230, and 203, among others, were considered and admitted
in evidence.   Rule 268 reads as follows: ''When trains run-
ning in opposite directions are to be moved toward each other
by train orders, the train whose rights are to be restricted
must first receive the order and the complete before the
order is given to the train to be moved against it or toward
it.''   Rule 230 provides in part: ''All regular trains, . . .
when becoming ten minutes late must report to the dis-
patcher and will also report for each successive ten minutes
lost.''   Rule 203 declared: ''A train must not leave its in-
itial station . . . without order or clearance, and until it is
ascertained by asking the dispatcher whether all trains due
have arrived or departed, mentioning particularly the last

train due, giving the train number.'' There was also a bulletin rule, of more recent adoption, to the effect that the conductor of a northbound. train at Vallejo must in every instance call up the dispatcher five minutes before the scheduled time for leaving.

It was admitted by plaintiff that he did not call up the dispatcher five minutes before the scheduled time to leave, nor when No. 6 was ten minutes late. But he positively asserted that he telephoned the dispatcher just before leaving Vallejo, which he states was about 9.:19 A. M. E. J. O'Leary, the dispatcher on duty when the collision occurred, called as a witness for the company, admitted that he did not give the restricting order to No. 6, but stated that he did call up the agent at Vallejo and learned that No. 6 was still there loading Wells Fargo express before he gave the order and complete to No. 5. The appellant has strongly contended that plaintiff took No. 6 out of Vallejo without calling up the dispatcher at all and that this was the proximate cause of the collision. Plaintiff testified that he telephoned to the dispatcher: ''No. 6 at Vallejo ready to leave the wharf,'' and that the answer came back ''No orders for No. 6,'' which meant that No. 6 should proceed to Collins to meet No. 5. F. M. Monning, whose wife left on No. 6, testified that the plaintiff entered the telephone booth, remained there about two minutes, and then came out and signaled the motorman to start the train. On the other hand, several other employees, who were listening on the telephone line when plaintiff declared he telephoned to O'Leary, flatly contradicted plaintiff on that point. Both sides agreed that the case turned on this question; in the words of the appellant, ''Around this point the trial centered.'' It was testified on behalf of the company that owing to plaintiff's syphilitic condition he might have entered the telephone booth to call up the dispatcher but forgot to do so.

As an illustration of the objectionable testimony, we quote from the examination of W. J. Juarez, the motorman on No. 5, as to the application of rule 268 to the situation:

''Q. Mr. Juarez, taking the circumstances as they existed while you were at Collins station on that morning, June 19, 1913, there as you say on time, north-bound No. 6 not there but due, you receiving orders through your conductor, written orders to proceed to some other. station for the purpose of

meeting No. 6, what was the rule under those circumstances which governed, so far as notification of No. 6 was concerned, of the orders given you?'' To this the witness replied that all he had to do was to carry out his orders.

"Mr. Bell.—I have not asked you about that. I have asked you now if you know, and you do, Mr. Juarez, don't you, what the company under that rule and practice followed, had to do with No. 6 before they gave you the order to proceed?

"A. Well I suppose they had to give that train No. 6 orders."

Juarez finally stated: "I say with respect to that rule 268 that I never have heard whether it applied to a train at a terminal or not."

Questions of similar import were asked of the witness Patten, who testified that rule 268 applied to a train lying at a terminal, and that it was the duty of the dispatcher under rule 268 to transmit the restricting order to train No. 6 before giving the "complete" to No. 5, and that he had no right under the rule to order No. 5 out of Collins until this was done. Patten was allowed to give further testimony to the effect that in the absence of a restricting order to No. 6 that train had the right of way over the track from Vallejo to Collins as against No. 5. Again he was permitted to testify as to which was the superior train under the circumstances presented, and further that there was no priority between the rule which required the dispatcher to give the restricting order before letting the other train move against it and the rule which required the conductor of a train at an initial or a terminal point to call up the dispatcher in each case before leaving.

[6] The admission of this testimony was clearly error. If the printed rules required elucidation it was the duty of the court to interpret them and not for the witnesses to establish by their opinions and conclusions the meaning of the rules and the duties of plaintiff and the dispatcher thereunder. (26 Cyc. 1472; Code Civ. Proc., sec. 2102.) Many of the objectionable questions and answers went directly to the very question of fact in controversy. For instance, it was testified that the dispatcher had no right to order No. 5 out of Collins until the clearance was given to No. 6, and that in the absence of orders No. 6 had the right to the track

from Vallejo to Collins as against No. 5. These and similar propositions of fact involving an interpretation of the printed rules were freely testified to by these witnesses. Nor was the vice of the rulings relieved by the fact that Juarez and Patten on cross-examination weakened the probative force of their direct testimony by the admission, for instance, that they did not know whether rule 268 applied to No. 6.

L. G. Eby, an agent of the Southern Pacific Company, called as an expert witness by the plaintiff, testified, over objection, as to the meaning of the operating rules of the defendant company, which, he admitted, he had merely glanced at and had not studied, as compared with the standard rules governing the operation of trains in parts of the United States, Canada and Mexico. The objections to the testimony were that he was not qualified as an expert on the subject, because he was not acquainted with the rules in controversy; that the standard rules were irrelevant and immaterial, and that his testimony consisted of opinions and conclusions based upon rules that were not those of the defendant company. This testimony should not have been allowed, even if the standard rules referred to by him could properly be made the basis of interpretation of the printed rules of the defendant company.

It is insisted by the respondent that, as this testimony came from witnesses experienced and versed in railway operation, it was not improperly admitted, for the reason that it did not "involve an interpretation of the abstract language of the rule, but simply went to the application of the rule in practice." With this we cannot agree. Practically every one of the questions contained such a phrase as "rule, custom, and practice." So that an affirmative answer carried the interpretation of the printed rule. The proper mode was for the witness to state *as a fact* the custom and practice and, if necessary, for the court to interpret the meaning of the printed rules and then for the jury to determine what rules governed the situation. But as conducted the inquiry was calculated to take from the jury the solution of the vital questions of fact in the case.

Respondent relies on 17 Cyc. 77, but we find nothing in that citation that supports the rulings complained of. It is contended that even if these rulings were erroneous the error was cured for the reason that the pivotal question of fact in

the case was whether plaintiff called up the dispatcher, and the court having repeatedly instructed the jury that if the testimony of the plaintiff on this point was not true he could not recover, it must be implied from the verdict that the jury reached the conclusion that the plaintiff told the truth. Assuming that this reasoning is sound, yet it cannot be accepted, because the premise is false. The court did *not* instruct the jury that if it was found the plaintiff did not call up the dispatcher *he could not recover*. If such an instruction had been given there might be warrant for holding that, as the jury had found in favor of the plaintiff on the question of fact, the erroneous ruling was immaterial. But the instructions that were given to the jury on this point were to the effect that if the plaintiff failed to call up the dispatcher, *and such failure was the proximate cause of the accident*, he could not recover. It cannot, therefore, be implied from the verdict that the jury, under the evidence and the instructions, may not have concluded that the plaintiff did not call up the dispatcher, yet that this dereliction of duty was not the proximate cause of the collision, but that, relying on the testimony complained of, the proximate cause was the giving by O'Leary of the order and the complete to No. 5 without restricting No. 6. For this reason, and because of what we shall say on the next point, it cannot be held that the error in the rulings was cured.

We have considered from another angle whether the admission of this testimony was prejudicial, and this involves the question whether the opinions and conclusions of the witnesses were in fact true, for, if so, the error in allowing the interpretation to come from the witnesses instead of from the court, would not, perhaps, be material. We are convinced, however, that the interpretation by the witnesses was not correct. In our view, rule 268 had no application to a train at an initial or terminal point. It had reference only to trains already started on a trip. Hence, we must conclude that, even if the court itself had held that rule 268 did apply, we would be called upon to reverse the judgment. Further, there was other testimony that the rule did apply, but that it was not always followed. William H. Howe, a witness for the plaintiff, and who, for six years prior to November, 1913, when he retired, had served as conductor and dispatcher for the defendant company, and at one time was in charge of

train No 6, testified, over objection, that rule 268 did apply, but that in a number of instances, when he was in charge of No. 6, train No. 5 arrived at Vallejo without the restricting order being given by the dispatcher to him as conductor of No. 6. O'Leary testified further that he was instructed by the chief dispatcher, who was also the assistant superintendent, that it was not the practice to give orders to No. 6 when that train was held at Vallejo, and No. 5 was given clearance. He stated further that "under the settled practice of the company during the six months I was dispatcher and I was conductor it was the uniform rule and custom that the conductor at Vallejo should receive his orders whether clearance or limiting—at the time he left the Vallejo wharf northbound, and not before. It was the practice, for example, if I wanted to move train 5 down south, because of the lateness of train 6 in departing from the terminal, simply to phone my order to Collins for that train to proceed, and to give my order to the north-bound train and its conductor later on, when the north-bound train called up, 'Ready to go.' That was the custom we worked under always. The first train called would get the order." So here was testimony tending to prove on the one hand that rule 268 did apply, but that it was not always followed, and, on the other hand, that rule 268 had no bearing on a train at Vallejo. In fact, O'Leary testified that he did not know about rule 268 until after the collision. With such contrariety of testimony, as to the question of the applicability of rule 268, and the custom and practice, the admission of the opinion and conclusion testimony must have inevitably entered into the solution of the question of proximate cause and prejudicially affected the rights of appellant.

We think this is the *rationale* of the matter. The railway was operated in connection with a steamship line, and the steamers, on account of the action of the tides, were frequently late. The company, so far as the operation of the trains was concerned, would naturally seek, in order to minimize delay to passengers, especially those making a round trip to San Francisco and other points, to expedite south-bound trains, when the boat was behind time, and so it was made the duty of the dispatcher to make all possible headway with those trains when north-bound trains were late. To accomplish this expedition, with due

regard to the safety of the traveling public and the company's employees, rules 230 and 203 were put in force. To further realize this object, the bulletin rule, requiring north-bound trains to call up the dispatcher five minutes before leaving time, was adopted. Thus under these rules the dispatcher would be left free to forward south-bound trains without being hampered by having to transmit restricting orders to north-bound trains at Vallejo. He could, therefore, move the south-bound trains from station to station without regard to north-bound trains until they were actually reported as being ready to leave Vallejo. Hence, if the plaintiff failed to call up the dispatcher, this was the proximate cause of the collision, for we entertain no doubt that the duty to establish communication with the dispatcher rested solely on the plaintiff; but if, on the other hand, he established communication with the dispatcher and received the response, "No orders for No. 6," instead of an order to meet No. 5 at Hatch, the proximate cause of the accident is traced to such erroneous order. We think that upon the entire record, including the evidence, that the error in the rulings in question resulted in a miscarriage of justice. (Const., sec. 4½, art. VI.)

Judgment and order reversed.

Olney, J., Shaw, J., Lennon, J., Melvin, J., Wilbur, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Melvin, J., and Lennon, J., who were absent.