[Civ. No. 4377. First Appellate District, Division Two.—February 17, 1923.]

## LOIS ANDERSON, Respondent, v. SAN FRANCISCO-OAKLAND TERMINAL RAILWAYS (a Corporation), Appellant.

[1] NEGLIGENCE — INJURY TO INTENDING STREET-CAR PASSENGER— CROSSING OF PRIVATE RIGHT OF WAY—CONTRIBUTORY NEGLIGENCE —INSUFFICIENCY OF EVIDENCE.—In this action for damages for personal injuries received by a person intending to board a street-car as a passenger from being struck by the car while attempting to cross the defendant's private right of way from the shed maintained by the defendant for the use of patrons to the place where it was necessary to board the car, the evidence fails to show that the plaintiff was guilty of contributory negligence.

[2] ID.—PASSING STATION WITHOUT STOPPING—NEGLIGENCE OF DEFENDANT—SUFFICIENCY OF EVIDENCE.—Evidence in such action that the plaintiff was in a position where she could be seen for a distance of six hundred feet, that she was near by a point that the company had established as a waiting-room for persons desiring to board its cars, and that while she stood in that position the car passed the station at a speed of fifteen

miles per hour without ringing a bell or giving any warning of its intention of passing without stopping, was sufficient to show the defendant's negligence.

[3] ID.—DAMAGES NOT EXCESSIVE.—In this action for damages for personal injuries received by the plaintiff, who at the time of the accident was seventy-eight years of age, and who expended $2,127.18 for medical treatment, the record on its face does not show passion or prejudice in awarding the plaintiff a verdict of $12,000.

[4] NEW TRIAL — INSUFFICIENCY OF EVIDENCE — SPECIFICATION OF PARTICULARS—APPEAL.—A motion for a new trial on the ground that the evidence is insufficient to justify the verdict without specifying in the bill of exceptions any particulars in which the evidence is insufficient cannot be considered.

APPEAL from a judgment of the Superior Court of Alameda County. A. F. St. Sure, Judge. Affirmed.

The facts are stated in the opinion of the court.

Morrison, Dunne & Brobeck, M. M. Bourquin and Chapman & Trefethen for Appellant.

Snook & Brown, Geo. M. Naus and Thos. J. Ledwich for Respondent.

STURTEVANT, J.—The defendant operates street-cars between Piedmont and Oakland. From Highland Avenue to the east the cars are operated over a private right of way. The diagram attached to the transcript shows a section of that right of way one hundred feet wide and nine hundred feet in length. On the south the private right of way is bounded by Park Way. Hillside Avenue approaches from the south and ends in Park Way. The railroad track comes from a southerly direction and at Highland Avenue swings into the private right of way and then down a grade of seven to eight per cent throughout the strip of ground included in the diagram. For the uses of the patrons of the road the defendant has located on the private right of way opposite the foot of Hillside Avenue a waiting place which is marked on the diagram

3. Excessive verdict for personal injuries not resulting in death, notes, 16 **Ann. Cas. 8; Ann. Cas.** 1913A, 1361.

"Umbrella Shed."  An intending passenger from Hillside Avenue can cross Park Way, then cross a concrete sidewalk, then pass up some stairs to the Umbrella Shed, and if he desires to board a car going toward Oakland it is necessary for him to cross the tracks leading to Piedmont and then continue on his course, going still farther north until he reaches a fence that is on the north side, and there he will be in a position to enter the cars operated by the defendant, which have a side entrance located in about the middle of the car.  The right of way on both sides of the tracks has been planted with small bushes and palms.  Photographs attached to the transcript show that the distances and obstructions are such that between the Umbrella Shed and the curve in the tracks at the east end of the private right of way are such that one of fair vision can see a person five feet six inches tall without difficulty.  The railroad tracks consist of ties and rails placed on the surface of the ground in about the same manner as the ordinary tracks of a steam railroad.  In some places fillings appear making the surface somewhat more nearly level and regular.  One of these filled spots is the space between the Umbrella Shed and the fence opposite.  The locations of objects, distances, etc., as above described, have existed since 1913 and ever since the plaintiff went to reside in that immediate neighborhood.

[1]  On the twentieth day of January, 1921, the plaintiff left the place where she was residing with her daughter (the second house on the street from the station), and went to the Umbrella Shed, intending to go to Oakland.  The exact time is not clear, but in any event it was in the neighborhood of half-past 1 or 2 o'clock in the afternoon. When she arrived at the Umbrella Shed she looked for a car coming from the east, and seeing none she took a seat. Later she arose from her seat and looking up the track she saw a car coming around the curve into the private right of way.  She then commenced to cross the right of way to the fence opposite the Umbrella Shed.  She stated that she looked toward the oncoming car at least three times which she specifically mentioned.  She also stated that she looked at other times but in this connection she based that statement upon her habit of doing so and did not claim to have any independent recollection of facts as

to the specific time and specific place of such observations. In reply to a question propounded by the appellant she stated that when the car was from fifty to one hundred twenty feet away from her she was five feet or six feet on the south side of the inbound car. At about that time she noticed that the car was coming faster than usual, nevertheless she proceeded toward the fence. In view of the testimony that we have just mentioned the appellant urges most vigorously that the respondent was guilty of contributory negligence, and cites and relies on such authorities as *Arnold* v. *San Francisco-Oakland T. Rys.*, 175 Cal. 1 [164 Pac. 798]. Such authorities are not in point in the case at bar. "They are, most of them, if not all, cases of strangers or persons acting independently, and having no relation to the defendant—cases of persons toward whom the defendant owed no duty other than that which all persons owe to each other under like circumstances of meeting by chance—not cases involving the duties and obligations of a carrier to a passenger. Carriers owe more than an ordinary duty to their passengers. . . . " (*Franklin* v. *Motor Road Co.*, 85 Cal. 63, 70 [24 Pac. 723, 725] ; 10 Cor. Jur., p. 1112, sec. 1492 ; *Chunn* v. *City & Suburban Ry.*, 207 U. S. 302, 308 [52 L. Ed. 219, 28 Sup. Ct. Rep. 63, see, also, Rose's U. S. Notes].)

[2] The appellant urges with equal vigor that the record does not show any negligence on the part of the defendant. We think the contention is not sustained by the record. In addition to the circumstances of time and place as above indicated, the record shows that the plaintiff left the Umbrella Shed and was walking out across the defendant's right of way and in the direction of the fence where it was necessary for her to go to board a car for Oakland. In very short, she was inside of the premises of the defendant and by the movements of her body she was indicating to the employee of the defendant that she was an intending passenger to go to Oakland. She was in a position where she could see, and could be seen for a distance of six hundred feet up the track toward the curve; she was near by a point that the company had established as a waiting-room for persons desiring to board its cars. It owed to her a higher degree of care than it owed to persons in the public streets. While

she stood in that position the defendant's car approached from the east, one witness testified, at a speed of twenty-five to thirty miles an hour; and, as it passed the Umbrella Shed, the car was going at a speed of fifteen miles an hour without ringing a bell or giving any warning of its intention of passing the station without stopping. It was going so fast that after it struck the plaintiff it ran on a distance of seventy-five or one hundred feet before it was brought to a standstill. If the jury based its verdict on the facts which we have stated it cannot be said that the verdict was not sustained by the evidence. (*Chunn* v. *City & Suburban Ry., supra;* 10 Cor. Jur., p. 929, sec. 1351.)

[3]  The jury brought in a verdict for $12,000. Judgment was entered accordingly. Thereafter the defendant moved for a new trial on all of the statutory grounds, the motion was denied and at this time the defendant attacks the verdict as being excessive. At the time of the accident the plaintiff was seventy-eight years of age; her expectancy of life was five years. The evidence does not show that she was dependent upon her earnings for her living, or that she had any earning capacity, and there is neither allegation nor proof that her earning power has been impaired. In the accident her scalp was lacerated; there were many abrasions on the body and many black and blue spots; the left hand suffered what is known as wrist drop, caused by the injury to the seventh cervical nerve. The right clavicle was fractured a little to the left of the middle. There was also a fracture of the fourth cervical vertebra, and of the second, third, fourth, and fifth ribs. There was angulation and some displacement of the fourth rib, and angulation on the right side. The break of the cervical vertebra constituted what is commonly called a broken neck. The kidneys apparently suffered an injury as was evidenced by the passing of blood shortly after the accident. The plaintiff was taken forthwith to a hospital, where she was given immediate and continuous aid. While there she suffered great pain, especially in breathing. She remained at the hospital until the twenty-eighth day of February and then was taken home. Until March 5th it was necessary that she should have two nurses. Apparently she received the most attentive and most expert medical

assistance, and the expenses of the treatment amounted to $2,127.18. Those special damages were hardly controverted by the defendant. At the time of the trial, four months after the accident, the plaintiff stated that she was recovered except that she was more timid than formerly, and that she could not pick up small objects like pins, and she further stated and illustrated to the jury that the movement of her head was limited so that she could not turn her head to the right or to the left to the same extent that an ordinary person can do. Assuming, in support of the judgment, that the bill for special damages was allowed in full, it then follows that the jury allowed $9,872.82, the balance of the verdict, as for pain and suffering. The question addressed to us at this time, therefore, is, was the sum so allowed for pain and suffering excessive? **[4]** In its motion the appellant made the attack on the ground that the evidence was insufficient to justify the verdict; but it did not specify in its bill of exceptions any particulars in which the evidence was insufficient. The attack from this angle cannot be considered. (*Graybill* v. *De Young,* 140 Cal. 323, 327 [73 Pac. 1067].) The appellant also attacked the verdict on the ground that the same was excessive, the excess appearing to have been given under the influence of passion or prejudice. (Code Civ. Proc., sec. 657, subd. 5.) In reply to this attack the respondent cites and relies on the leading case in California, *Aldrich* v. *Palmer et al.,* 24 Cal. 513, 516. In that case the supreme court said: "*Where the law furnishes no rule for the measurement of damages,* their assessment is peculiarly the province of the jury, and the court will never interfere with their verdict merely on the ground of excess. . . . The amount of the verdict is not suggestive of either passion or prejudice, or corruption; . . . " (Italics ours.) The language used above by Mr. Chief Justice Sanderson was apparently carefully chosen from the authorities. In 1812 Mr. Chief Justice Kent was called upon to decide a similar question in *Coleman* v. *Southwich,* 9 Johns. (N. Y.) 45 [6 Am. Dec. 253, 258]. In his decision, probably the leading case in America, he stated: "In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; *for they have no standard by which to ascertain the excess.* These are the

principles which have been laid down by the most eminent judges who have presided in the English courts since the year 1760, and by which they have uniformly governed themselves in cases in which the damages would appear to have been, beyond all comparison, more excessive than in the present case. (*Leeman* v. *Allen*, 2 Wils. 160; *Boardman* v. *Carrington*, 2 Wils. 244; *Wilford* v. *Berkley*, 1 Burr. 609; *Redshaw* v. *Brook*, 2 Wils. 405; *Bruce* v. *Rawlins*, 3 Wils. 60; *Huckle* v. *Money*, 2 Wils. 205; *Leith* v. *Pope*, 2 W. Black. 1327; *Gilbert* v. *Burtenshaw*, Cowp. 230; *Duberly* v. *Gunning*, 4 Term Rep. 651.) In one case in an action for *crim. con.* the jury gave 5,000£, and Lord Kenyon said he would have been satisfied if only nominal damages had been given, yet he knew of no case that would authorize the court to interfere, and he said he had not courage enough to make the first precedent. The doctrine contained in these cases has been acknowledged to be sound law, and has been adopted and sanctioned by the supreme court of Massachusetts, in the case of *Coffin* v. *Coffin*, 4 Mass. 1 [3 Am. Dec. 189]; and by this court in the case of *Tillotson* v. *Cheetham*, 2 Johns. 63 [3 Am. Dec. 459].'' (Italics ours.) Some of the American states have fixed the amounts by statute. We are not permitted to consider those amounts in determining such questions. (*Redfield* v. *Oakland C. S. Ry. Co.*, 110 Cal. 277, 285 [42 Pac. 822, 1063].) By parity of reasoning we are not entitled to consider the amounts that have been approved or disapproved in the courts of other jurisdictions. We are bound, however, to confine our consideration to the record in each particular case. (*Doolin* v. *Omnibus Cable Co.*, 125 Cal. 141, 144 [57 Pac. 774].) The record on its face does not show passion or prejudice.

The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 18, 1923.

All the Justices concurred.