[Civ. No. 4599. First Appellate District, Division One.—September 19, 1923.]

MINNIE H. BROWN, Respondent, v. SIGMUND BECK, Appellant.

[1] NEGLIGENCE — INJURY FROM AUTOMOBILE — SUBSEQUENT DEATH — DAMAGES—VERDICT—EVIDENCE.—In an action by a widow and heir at law for damages for the death of her husband occurring some time after he, while crossing a public street, was struck by a motor-truck negligently driven by an employee of defendant, a verdict of seven thousand five hundred dollars was not excessive, nor the result of passion or prejudice, where such verdict represented about one-half of what the deceased would have earned had he continued working for the period of his expectancy of life at the same salary he was receiving at the time of his injury.

[2] ID. — MEASURE OF DAMAGES — ABSENCE OF RULE — ASSESSMENT QUESTION FOR JURY.—Where the law furnishes no rule for the measure of damages, their assessment is peculiarly the province of the jury, and the court will never interfere with the verdict merely on the ground of excess.

[3] ID.—DEATH—PROOF.—In such action, the party causing the injury cannot escape full liability without showing death must have resulted if the injury had not been done.

[4] ID.—PROXIMATE CAUSE—EVIDENCE.—In such action, where deceased's right hip bone was broken by being struck by defendant's truck, and the deceased was taken to a hospital almost immediately after the accident, and while there in his room and convalescing, in the presence of his physician and in the act of demonstrating his ability to use his crutches, fell backward, striking the back of his neck on a window-sill, and died shortly thereafter, the jury was warranted in determining that the proximate cause of death was the striking of deceased by defendant's motor-truck.

[5] ID.—PLEADING—PARTIES—LEGAL CAPACITY OF PLAINTIFF TO SUE. In such action, defendant's demurrer on the ground that plaintiff did not have the legal capacity to sue because she sued as

1. On excessive or inadequate damages for injuries resulting in death, notes, 18 Ann. Cas. 1209; Ann. Cas. 1915C, 449; Ann. Cas. 1916B, 460; L. R. A. 1916C, 820.

4. Subsequent conduct of injured person in its relation to proximate cause, as distinguished from contributory negligence, notes, 1 Ann. Cas. 230; 18 L. R. A. (N. S.) 640.

the widow and "an heir," or, suing as "an" heir, did not join with her other heirs of deceased, either as plaintiffs or defendants, or did not sue for their benefit, was properly overruled, where the complaint did not show on its face that there were other heirs.

[6] ID.—PARTIES—RECOVERY BY ONE HEIR BAR TO SUBSEQUENT ACTION.—Recovery by one heir for death under the statute bars a subsequent action for the same cause.

[7] ID.—MEASURE OF DAMAGES—INSTRUCTION.—In such action, the law was correctly stated by an instruction that "If you find that the plaintiff is entitled to recover, you may award her such damages, within the amount claimed, as, in your opinion, will compensate her for the pecuniary damage proved to have been sustained by her and proximately caused by the wrong complained of. If you come to the conclusion that the plaintiff is entitled to a verdict for damages, then in estimating the amount of such damages I instruct you that the measure of such damages is such sum as will equal the pecuniary loss that it may be reasonably supposed the plaintiff will have actually suffered by being deprived of the services, earnings, society, comfort, and protection of the deceased. But you may not include in such estimate any compensation for the sorrow and distress, if any, which ensued from the death of the deceased, or any pecuniary loss which is remote or conjectural"; and the trial court did not commit error in failing to include the negative element in such instruction that the pain or anguish suffered by the deceased is not to be included in the estimate of damage. (On petition for hearing in supreme court, approval of instruction withheld.)

[8] ID.—INSTRUCTIONS—WAIVER.—In such action, the defendant will not be heard to complain on appeal that a given instruction omitted a negative element, where he had the opportunity at the trial to request an instruction in accordance with his view, but failed to take advantage of it.

[9] ID.—DAMAGES—INSTRUCTION.—In such action, an instruction that "You should estimate and determine the amount that the deceased would, in all *probability*, have earned in the years yet remaining to him, and, deducting from this the amount which he would reasonably require for his own personal use and maintenance, give a verdict which would pecuniarily compensate her," was not erroneous in that the word "reasonable" was omitted before the italicized word "probability," since the latter word imports "reasonable." (On petition for hearing in supreme court, approval of instruction withheld.)

[10] ID. — EXPECTANCY OF LIFE — INSTRUCTION. — In such action, a given instruction that "In determining the probable length of life the decedent would have enjoyed, you are entitled to consider the mortality or expectancy tables as evidence bearing on that question" was not objectionable in that the trial court should have added the words, "and as tending to show the ordinary experience in like cases," where the expectancy of life of the average man of deceased's age was stipulated to by the parties; nor was such instruction objectionable in that it did not tell the jury that the expectancy tables were to be considered only if decedent's death was found to be proximately caused by defendant's negligence. (On petition for hearing in supreme court, approval of instruction withheld.)

[11] ID.—USE OF STREETS—RIGHTS AND DUTIES OF PEDESTRIAN AND OTHERS—INSTRUCTIONS.—In such action, the objection that a given instruction as follows: "You are further instructed that the deceased had the right to cross Montgomery Street at its intersection with Sumner Street," implies an absolute right in the deceased to cross the first-mentioned street irrespective of the rights of others, is without merit when read in connection with the whole charge and particularly when read in connection with the instruction immediately preceding it, which states the relative rights and duties of a pedestrian and an automobile driver. (On petition for hearing in supreme court, approval of instructions withheld.)

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edward I. Butler, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Edgar C. Levey for Appellants.

Burbank & Spence, A. J. Fritz, Daniel W. Burbank and Homer R. Spence for Respondent.

ST. SURE, J.—Mathew D. Brown, while crossing Montgomery Street, in San Francisco, was struck down by a motor-truck negligently driven by an employee of the defendant. Mr. Brown sustained serious injuries which resulted in his death. Plaintiff brought this action as the

---

10. Admissibility of tables of mortality or expectancy of life as evidence, notes, 12 Ann. Cas. 425; Ann. Cas. 1918A, 1021; 40 L. R. A. 553; L. R. A. 1916E, 142; L. R. A. 1918C, 1056, 1071.

widow and heir at law of her deceased husband. The cause was tried before a jury, which rendered a verdict in favor of plaintiff for the sum of seven thousand five hundred dollars. From the judgment entered on the verdict defendant appeals, urging as grounds for reversal, (1) that the verdict is excessive; (2) that the injuries were not the proximate cause of the death of decedent; (3) the plaintiff did not have legal capacity to sue; (4) certain instructions, given by the court to the jury, were erroneous.

Mr. Brown's right hip bone was broken. He was taken to a hospital almost immediately after the accident, where he remained until his death. During his enforced inactivity in the hospital, and in spite of attendants moving him as much as possible to counteract the tendency, he contracted congestive pneumonia, a common danger in cases necessitating a recumbent position and inaction. He rallied from this attack, the pneumonia seemingly disappearing. He improved to such a degree that for a month a nurse and an orderly had supported him in getting him out of bed and attempting to develop the use of his injured leg. From this he went to using crutches. While demonstrating to his physician in his hospital room his ability to move with their aid, he suddenly fell backward, striking the back of his neck on a window-sill. He immediately stated to his physician that he was paralyzed; his arms were numb and he was unable to use his legs. An X-ray showed a bone of the neck broken and the spinal cord injured. Within a few days thereafter, having been forced to lie entirely quiet in bed on account of the severe pain attendant on moving him, he again developed congestive pneumonia, and died. The autopsy surgeon of the coroner's office found death was caused by valvular disease of the heart, coupled with an acute congestion of the lungs.

At the time of the accident deceased was a man of fifty-seven years of age; he had, according to his attending physicians, a leaking heart, which compensated; hardening of the arteries and signs of a chronic pleurisy; to all of which the physicians attached little importance as affecting his chances of recovery from the accident which necessitated his hospital care, or of living his allotted span. Counsel stipulated that by the American experience table of mortal-

ity the expectancy of life of the average man of fifty-seven years is 16.1 years.

[1] The defendant attacks the verdict of seven thousand five hundred dollars upon the ground that it was excessive, the excess appearing to have been given under the influence of passion or prejudice. (Code Civ. Proc., sec. 657, subd. 5.) When injured, deceased was temporarily employed and receiving $18.75 per week. This evidence, as a criterion of his earning capacity, is all the court allowed to be admitted. On this basis the verdict of the jury represented about one-half of what he would have earned had he continued working at the same salary for the period of his expectancy of life. [2] But aside from this, where the law furnishes no rule for the measure of damages, their assessment is peculiarly the province of the jury, and the court will never interfere with the verdict merely on the ground of excess. The amount of the verdict is not suggestive of either passion, prejudice, or corruption. The damages must be flagrantly outrageous and extravagant or the court cannot undertake to draw the line. We are bound to confine our consideration to the record, and the record on its face does not show passion or prejudice. (*Anderson* v. *San Francisco-Oakland Terminal Rys.*, 61 Cal. App. 21 [214 Pac. 289]; *Howland* v. *Oakland Ry. Co.*, 110 Cal. 513, 523 [42 Pac. 983]; *Redfield* v. *Oakland Ry. Co.*, 110 Cal. 277 [42 Pac. 822, 1063]; *Tedford* v. *Los Angeles Electric Co.*, 134 Cal. 76 [54 L. R. A. 85, 66 Pac. 76]; *Hale* v. *San Bernardino Traction Co.*, 156 Cal. 713 [106 Pac. 83]; *Evarts* v. *Santa Barbara Ry. Co.*, 3 Cal. App. 712 [86 Pac. 830]; 13 Cyc. 123; *Blackwell* v. *American Film Co.*, 189 Cal. 689 [209 Pac. 999].)

Defendant contends that the injuries were not the proximate cause of death. The study of the origin of the doctrine of proximate cause is alluring. Much of interest has been written upon the subject. Space, time, and requirement of the problem before us merely permit hasty reference to its derivation and unfoldment. "He that does the first wrong shall answer for all consequential damages," said Lord Holt in *Roswell* v. *Prior*, 12 Mod. 639. In 1773 Chief Justice DeGrey said: "Everyone who does an unlawful act is considered the doer of all that follows" (*Scott* v. *Shepherd*, 2 W. Black. 892, 899). Later the courts at-

tempted to limit this responsibility. Lord Kenyon, in *Ash-ley* v. *Harrison* [1793], 1 Esp. 48, pointed out that "the injury complained of was too remote." In 1806 Lord Ellenborough, in *Vicars* v. *Wilcocks,* 8 East, 1, said that "the damages must be the legal and natural consequences of the words spoken." Sergeant Wild, in *Ward* v. *Weeks* [1830], 7 Bing. 211, 212, expressed this idea: "a man is liable only for the natural and proximate consequences resulting directly from some intermediate agent." The principle was stated in America in 1848 by Greenleaf (2 Greenl. Ev., 1st ed., 258) as follows: "The damages to be recovered must always be the natural and proximate consequence of the act complained of." In an early case in this state (*Hawthorne* v. *Siegel,* 88 Cal. 159 [22 Am. St. Rep. 291, 25 Pac. 1114]), an action for damages for trespass, we find our supreme court making a broad application of the principle. The supreme court adopted the definition given by the United States supreme court in *Aetna* v. *Boon,* 95 U. S. 117, 130 [24 L. Ed. 395, see, also, Rose's U. S. Notes], as follows: "The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation"; made the following quotation from *Brady* v. *Northwestern Ins. Co.,* 11 Mich. 425: "That which is the actual cause of the loss, whether operating directly, or by putting intervening agencies, the operation of which could not be reasonably avoided, in motion, by which the loss is produced, is the cause to which such loss should be attributed"; approved the following language from *Wood* v. *Currey,* 57 Cal. 208, 210: "Damages which accrue subsequent to the tort, but of which it is the primary cause, are not separate causes of action, but are parts of the tort itself for which the cause of action is given"; and, after summing up the evidence in the case, said: "The cause which set all the rest in motion was the trespass. The operation of the subsequent agencies of loss was the result of this wrongful injury. Hence they resulted from that trespass. To the first cause primarily all the damages resulting are to be attributed, although each item of damage was produced by some separate cause following the primary cause, and operating more immediately in producing the damages." The definition of proximate cause in modern text-books and recent reports vary much in expression and sometimes in idea. The most

widely quoted definition is the following: "The proximate cause of an event must be understood to be that which in a natural and continuous sequence, unbroken by any new and independent cause, produced that event, and without which that event would not have occurred." (*Bosqui* v. *Sutro R. R. Co.*, 131 Cal. 390, 397 [63 Pac. 682, 684]; Shearman and Redfield on Negligence, sec. 26.) It was given by the court to the jury as an instruction in this case.

Illustrative of the application of the rule made by courts of other jurisdictions are the personal injury cases hereinafter mentioned.

*Batton* v. *Public Service Corporation of New Jersey*, 75 N. J. L. 857 [127 Am. St. Rep. 855, 18 L. R. A. (N. S.) 640, 69 Atl. 164]. The facts show that defendant's negligent act had caused an injury from which the plaintiff was still suffering. An act on the part of the plaintiff caused a further injury. The question was presented: "Can it be said that, assuming that the plaintiff was free from contributory negligence, the original negligence was the proximate cause of the second injury?" The rule laid down by the court is that the original negligence continued and accomplished the final result and is to be deemed the proximate cause notwithstanding the fact that some act of the plaintiff aggravates the injury, if that act is in the course of conduct of a reasonably prudent person under all the circumstances.

*Hyvonen* v. *Hector Iron Co.*, 103 Minn. 331 [123 Am. St. Rep. 332, 115 N. W. 167]. A case where, as the result of an accident, the plaintiff's leg was broken, and some weeks afterward, while walking on crutches, he slipped and fell, breaking his leg in the same place as before. The court held that evidence of the second breaking was admissible in an action to recover damages on the ground that the accident was due to defendant's negligence. It was further held that it was for the jury to say whether the second breaking was a direct result of the first.

At this juncture it seems pertinent to say that upon reading the instructions given by the court to the jury we note that stereotyped definitions were given of negligence and contributory negligence; and, in this connection, we further observe an instruction was given as follows: "In determining the proximate cause of the death you are instructed that

the intervention of a second injury or the intervention of disease, or both, resulting in death, does not necessarily make such intervening injury or disease the proximate cause of the death. It is for the jury to determine whether such intervening causes, if any, are independent causes, or whether such intervening causes are dependent upon another cause which is the efficient cause.''

*Hartnett* v. *Tripp*, 231 Mass. 382, 384 [121 N. E. 17, 18]. An action for damages for negligence. Quoting from the decision: ''As a result of the accident the plaintiff received a fracture of the femur of his right leg and was taken to a hospital where he remained in bed for about nine weeks; at the end of that time he was able to get up by the use of crutches and sit in a wheel-chair; there was evidence that in getting out of the chair one of his crutches slipped and he fell back into the chair, breaking his leg at the place of the original fracture. The evidence relating to this second fracture was admitted by the presiding judge upon the question of damages, subject to the exception of defendant. It is plain that the evidence was properly admitted. While a wrongdoer cannot be charged with liability for the result of a separate, independent, and intervening act for which he is in no way responsible, he is liable for the direct and proximate result of the first injury. The second injury, caused by the slipping of the plaintiff's crutch, could have been found to have had a causal relation to the original injury for which the defendant would be liable. It does not appear that the plaintiff acted carelessly or improperly; he had so far recovered from his first injury that he was permitted to use crutches, although still being treated at the hospital. In attempting to get out of the chair with the aid of his crutches, he was performing a natural and necessary act, which it could not be ruled was negligent or so distinct from his original injury as to be a separate and independent act. The presiding judge clearly and accurately instructed the jury that the plaintiff could not recover for the second fracture as an element of damages unless they were satisfied that it was a natural and proximate result of the original injury.''

*Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264 [48 Am. Rep. 622]. The action was for damages for negligence occasioned by reason of a defect in a street. The axle of plaintiff's car-

riage was broken and he was dragged over the dashboard. He procured another carriage and drove several hours, during which time he was exposed to the cold and rain. The plaintiff gave evidence tending to show that the diseases from which he was suffering were the results of the strain and shock caused by his being dragged over the dashboard; and the defendant's evidence was that the injuries resulted from the subsequent exposure. The jury found that they resulted from both. It was held that a recovery was justified whether the injuries proceeded from the strain and shock or from the subsequent exposure, or both.

In *Smith* v. *Northern Pacific Ry. Co.*, 79 Wash. 448, 453 [140 Pac. 685, 687], this rule is enunciated: "If a person receives an injury through the negligent act of another and the injury is afterward aggravated and a recovery retarded through some accident not the result of want of ordinary care on the part of the injured person, he may recover for the entire injury sustained, as the law regards the probability of such aggravation as a consequence and natural result likely to flow from the original injury." Cited with approval in *Ross et ux.* v. *Erickson Construction Co.*, 89 Wash. 634 [L. R. A. 1916F, 319, 155 Pac. 153, 157]; *Stahl* v. *Southern Michigan Ry. Co.*, 211 Mich. 350 [178 N. W. 710, 711].

In the instant case, by its verdict, the jury found that defendant was guilty of negligence which caused the original injury; that the decedent was free from fault; and also found against defendant upon the issue of the proximate cause of death. Upon all questions of fact submitted for determination the jury's verdict is conclusive. (*Sacchi* v. *Bayside Lumber Co.*, 13 Cal. App. 72, 83 [108 Pac. 885].)

To briefly recapitulate, the evidence shows that decedent was injured by being struck by defendant's motor-truck. The use of crutches by decedent while convalescing was a necessity occasioned by the original injury caused by the defendant's negligence. Decedent, while in his room at the hospital, in the presence of his physician, demonstrating his ability to use his crutches "tried to back up, lost his balance," and fell. According to the testimony of physicians, patients using crutches while recovering from injuries frequently have falls, such being an ordinary hazard of convalescence. It was not shown, nor was there any

evidence from which it might have been inferred by the jury, that decedent did not exercise ordinary care in using his crutches.

Counsel for defendant concedes that decedent "might not have died (when he did) if he had not been injured and required to move about on crutches." But he endeavors to escape responsibility, arguing that "it was not likely, nor was it proved, that death would not have come had he not been injured by the fall and thereby confined to his bed." Such position is untenable. [3] The party causing the injury cannot escape full liability without showing death must have resulted if the injury had not been done. (*Beauchamp* v. *Saginaw Mining Co.,* 50 Mich. 163 [45 Am. Rep. 30, 15 N. W. 65].)

[4] We have carefully examined the entire record in this case, and we are of the opinion that the evidence shows a complete case within the doctrine of proximate cause against the defendant, and the jury was fully warranted in so determining.

[5] Defendant's next point is that plaintiff did not have the legal capacity to sue, the objection being made that she sued as the widow and "an heir," or suing as "an" heir, did not join with her other heirs of deceased, either as plaintiffs or defendants, or did not sue for their benefit. Defendant's demurrer was properly overruled on this ground, because it does not appear on the face of the complaint that there are other heirs; and though he again pleaded the same defense in his answer, there was no evidence introduced respecting any other heirs. In *Groom* v. *Bangs,* 153 Cal. 456, 458 [96 Pac. 503, 504], a husband sued merely as such for damages for the death of his wife, and the point was raised that he was not described as "heir," nor were the other heirs joined in the suit. In passing upon this point Mr. Justice Shaw said: "It was not necessary to expressly allege that he was her heir. It is alleged that she was his wife at the time of her death, and as surviving husband, he would, under any ordinary circumstances, be her heir. *Knott* v. *McGilvray,* 124 Cal. 128 [56 Pac. 789]." Certainly, the allegation in that case was not as clear as here. [6] Moreover, it has been held that recovery by one heir for death under the statute bars a subsequent action for the same cause. In the case of *Salmon*

v. *Rathjens,* 152 Cal. 290 [92 Pac. 733], cited by defendant, the allegation in the complaint was that plaintiffs ''are daughters of Moses Farmer, deceased.'' Demurrer and answer were interposed similar to those in this case. These excerpts are from the decision: '' . . . The complaint stated a cause of action upon the theory that the plaintiffs were the only heirs of deceased, just as completely as it would have done had it in terms alleged that plaintiffs were the only heirs . . . we are satisfied that defendant could not be subjected to a second recovery in a subsequent action by some other heir or heirs of whose existence he had no knowledge at the time of this action. . . . Our law allows but a single action in such cases, and in that action the damage to all heirs is recoverable.''. The complaint before us also stated a cause of action on the theory that the wife was the only heir, and defendant is not harmed in any event.

The last point made for reversal is that certain instructions given by the trial court were erroneous. The instructions given by the court are, in the main, stock instructions given to juries in the trial of damage cases for personal injuries. All of them are ''ancient and honorable'' and most of them supported by respectable authority. The assignments of error are hypercritical in the extreme, as illustrated by the first. The following instruction was given: ''If you find that the plaintiff is entitled to recover, you may award her such damages, within the amount claimed, as, in your opinion, will compensate her for the pecuniary damage proved to have been sustained by her and proximately caused by the wrong complained of. If you come to the conclusion that the plaintiff is entitled to a verdict for damages, then in estimating the amount of such damages I instruct you that the measure of such damages is such sum as will equal the pecuniary loss that it may be reasonably supposed the plaintiff will have actually suffered by being deprived of the services, earnings, society, comfort, and protection of the deceased. But you may not include in such estimate any compensation for the sorrow and distress, if any, which ensued from the death of the deceased, or any pecuniary loss which is remote or conjectural.'' The action is one under section 377 of the Code of Civil Procedure, and the instruction given is based thereon.

The last clause of section 377 provides that in every action under it such damages may be given as under the circumstances of the case may be just. The statutory rule is the only measure of damages. It is the only rule to be applied in any action under the section. (*Bond* v. *United Railroads,* 159 Cal. 270, at page 276 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366].) Complaint is made that the instruction is incomplete in that it fails to incorporate, in addition to the things which are noted in the last sentence as not to be included in the estimate of damage, the pain or anguish suffered by decedent. [7] The instruction clearly stated the law and is supported by these authorities: *Beeson* v. *Green etc. Co.,* 57 Cal. 37; *Munro* v. *Pacific etc. Co.,* 84 Cal. 525 [18 Am. St. Rep. 248, 24 Pac. 303]; *Pepper* v. *Southern Pacific Co.,* 105 Cal. 402 [38 Pac. 974]; *Harrison* v. *Sutter Co.,* 116 Cal. 169 [47 Pac. 1019]; *Dyas* v. *Southern Pacific Co.,* 140 Cal. 308 [73 Pac. 972]; *Quill* v. *Southern Pacific Co.,* 140 Cal. 273 [38 Pac. 974]; *Hale* v. *San Bernardino etc. Co.,* 156 Cal. 713 [106 Pac. 83]; *Bond* v. *United Railroads,* 159 Cal. 270 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366]. We do not think that the court committed error in failing to include a negative element in the instruction. [8] Defendant had opportunity at the trial to request an instruction in accordance with the view he now expresses, and having failed to take advantage of that opportunity he may not be heard to complain at this time.

[9] It is urged that the court erred in giving the following instruction, designated as number XXIX: "You should estimate and determine the amount that the deceased would, in all probability, have earned in the years yet remaining to him, and, deducting from this the amount which he would reasonably require for his own personal use and maintenance, give a verdict which would pecuniarily compensate her." It is said that error was committed in omitting the word "reasonable" before the word "probability" in line 2 of the instruction. "Probability" means the state or character of being probable. Webster's and the Century dictionaries define "probable" as follows: "Having more evidence for than against; supported by evidence which inclines the mind to belief but leaves some room for doubt; likely." This definition is accepted in numerous cases in

which the word "probable" is construed. The Century, in referring to the definition, gives the word "reasonable" as cognate and synonymous therewith. As used in the instruction under examination, we think the word "probability" imports "reasonable."

[10] Objection is made to instruction XXX. The court instructed the jury: "In determining the probable length of life the decedent would have enjoyed, you are entitled to consider the mortality or expectancy tables as evidence bearing on that question." It is said that the court should have added the words "and as tending to show the ordinary experience in like cases." We are unable to see how the clause suggested would have added anything to the instruction. It has been said that instructions must be construed in reference to the proof. (*Brumagim* v. *Bradshaw,* 39 Cal. 24.) The record shows that the following took place during the course of the trial:

"Mr. Spence: It may be stipulated, may it, Mr. Lipman, that the average man who attains the age of fifty-seven years has an expectancy of 16.1 years to live?

"Mr. Lipman: According to the American Experience Table of Mortality.

"Mr. Spence: Yes, according to the American Experience Table of Mortality."

Under the circumstances we think this assignment of error is without merit. The further objection is made to this instruction that the jury should have been told that the expectancy tables were to be considered only if decedent's death was found to be proximately caused by defendant's negligence. It seems necessary to reiterate: the instructions must be taken, considered and construed as a whole. The instruction criticised is relevant to the measure of damages. The record shows that the court told the jury that the instructions relating to damages were only to be considered if the decedent's death was found to be proximately caused by defendant's negligence.

[11] The last objection is to instruction XXXV, as follows: "You are further instructed that the deceased had the right to cross Montgomery Street at its intersection with Sumner Street." It is argued that this instruction as it stands implies an absolute right in the decedent to cross Montgomery Street irrespective of the rights of others. This

instruction, like other instructions criticised, should be read
in conjunction with the whole charge of the court, and par-
ticularly should it be read in connection with the instruction
which immediately precedes it, to wit, instruction XXXIV,
which is as follows:

"A public highway is open in all its length and breadth
to the reasonable common and equal use of the people on
foot or in vehicles. The owner of an automobile has the
same right as the owner of other vehicles to use the highway,
and he must exercise reasonable care and caution for the
safety of others.

"A traveler on foot has the same use to the public high-
way as an automobile or other vehicle. In using such high-
way all persons are bound to use reasonable care to prevent
accidents. Such care must be in proportion to the danger
in each case. The persons having the management of the
automobile and the travelers on foot are both required to
use reasonable care, circumspection, prudence, and discre-
tion as the circumstances require. Both are bound to the
reasonable use of all their senses for the prevention of acci-
dent, and the exercise of all such reasonable caution as
ordinary careful and prudent persons would exercise under
like circumstances."

It will readily be seen that this last assignment of error,
like the others which have preceded it, is wholly without
merit.

The judgment is affirmed.

Richards, J., and Tyler, P. J., concurred.

A petition by appellant to have the cause heard in the
supreme court, after judgment in the district court of ap-
peal, was denied by the supreme court on November 15,
1923, and the following opinion then rendered thereon:

The COURT.—In the petition for transfer to this court
petitioner does not complain of the giving of the instructions
set out in the opinion of the district court of appeal, but
contends that the verdict is excessive and that the death
was not proximately caused by the injury.

These points are satisfactorily determined by the district
court of appeal and that court also correctly answers the

objections made by petitioner to the instructions set out in that opinion.

We do not wish, however, to be understood as approving those instructions. The measure of damages for injuries to result in the future is well settled. (See sec. 3283, Civ. Code; also, *Saylor* v. *Taylor*, 42 Cal. App. 474 [183 Pac. 843]; *Melone* v. *Sierra Ry. Co.*, 151 Cal. 113 [91 Pac. 522]; *Walker* v. *Southern Pac. Co.*, 162 Cal. 121 [121 Pac. 369]; *Wiley* v. *Young*, 178 Cal. 681 [174 Pac. 316]; *Richman* v. *San Francisco etc. Ry.*, 180 Cal. 454 [181 Pac. 769].)

The petition is denied.