[Civ. No. 2790.   Third Appellate District.—December 8, 1924.]

ROBERT TOWNE, Respondent, v. J. S. GODEAU et al., Appellants.

[1] NEGLIGENCE—CUTTING CORNERS—NEGLIGENCE PER SE.—Where the driver of an automobile is proceeding northerly along the right-hand or east side of a street which runs north and south and, desiring to proceed westerly along an intersecting street, turns to the left or westerly before reaching the center of the intersection, in violation of the provisions of the Motor Vehicle Law, such violation constitutes negligence *per se.*

[2] ID.—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF—EVIDENCE—PROVINCE OF JURY.—In this action for damages for personal injuries sustained by plaintiff as the result of a collision occurring at a street intersection when defendants' automobile, which was

---

1. See 3 Cal. Jur. 839, 909.

2. Liability for collision of automobile with bicyclist, note, 28 L. R. A. (N. S.) 944.

proceeding northerly on the east side of the street, was turned to the left or west into an intersecting street before reaching the center of the intersection, the burden of proof was upon defendants to show contributory negligence on the part of plaintiff, as alleged in defendants' answer, and the question of whether plaintiff was guilty of negligence was clearly a question for the jury, in view of the conflicting evidence as to the speed at which plaintiff was traveling as he approached the intersection, as to the relative positions of the parties when defendants' machine was turned to the left, and as to whether plaintiff had exercised the proper degree of care.

[3] ID.—APPROACH OF INTERSECTION—ORDINARY CARE.—While nearing and entering the intersection, ordinary care required plaintiff (who was proceeding southerly along on the right-hand or west side of the street) to look to the left for approaching vehicles, and he had a right to assume that no vehicle would approach him from the left beyond the medial line of the intersecting street, but this did not mean that he had the right to proceed blindly, in reckless disregard of obvious danger, for it was his duty to exercise ordinary care, even though the negligence of another caused the danger.

[4] ID.—EXERCISE OF ORDINARY CARE — INSTRUCTIONS. — In such an action there is no merit in defendants' contention that an instruction that plaintiff (who was driving from the north) "had a right to assume that any person driving from the south . . . and desiring to turn to the left or west . . . would obey the law and run beyond the center of the intersection . . . passing to the right thereof, before making such turn," in effect advises the jury "that the plaintiff did not and was not required to see that which he could have seen with the exercise of ordinary care," where the two instructions immediately following, and which were proposed by defendants, tell the jury in effect that even if the driver of defendants' machine violated the law in turning into the intersecting street, still plaintiff cannot recover if the exercise of ordinary care on his part would have prevented the accident.

[5] ID.—LIABILITY FOR ACTS OF EMPLOYEE—INSTRUCTIONS—OMISSION OF NECESSARY ELEMENTS.—In such an action, it being admitted at the trial that the defendant driver of the automobile in question was in the employ of his codefendant, the owner of the automobile, it is not error to instruct the jury, at plaintiff's request, that "If you are satisfied from the evidence that at the time of the collision the defendant . . . [driver] was acting within the scope of his employment and doing what his employer had directed, and any damage resulted therefrom, . . . [the defendant employer] is responsible therefor, whether the damage be occasioned by negligence or by a wanton or reckless purpose to accomplish the master's business in a lawful manner," where

3.  See 3 **Cal. Jur.** 903.

it is apparent that such instruction was not intended as a statement of the elements necessary to a recovery, but only of the employer's liability for the acts of his employee within the scope of the employment, and other instructions fully and clearly cover the questions of proximate cause and contributory negligence.

[6] ID.—VIOLATION OF LAW—NEGLIGENCE PER SE—INSTRUCTIONS.—In such an action, it is not error to instruct the jury that if the driver of defendants' automobile turned to the left in violation of the law, "that in itself establishes negligence . . . and it is not necessary that the plaintiff make any further showing of negligence in defendants in order to recover, if you find that such negligence was the proximate cause of the injury sustained by the plaintiff," where such instruction does not purport to state all the elements which will justify a verdict, and in other instructions the omitted elements are fully covered.

[7] ID.—NEARNESS TO INTERSECTION—DUTY TO YIELD RIGHT OF WAY—ERRONEOUS INSTRUCTION.—The collision having happened while the Motor Vehicle Act of 1915 (Stats. 1915, p. 397) was in force, it was not error to refuse defendants' requested instruction to the effect that if the jury believed from the evidence in the case that plaintiff was "farther from the point of intersection of their paths than the defendant" driver, then it was the duty of plaintiff to "yield the right of way" to said defendant.

[8] ID.—FUTURE DETRIMENT—MEASURE OF DAMAGES—ERRONEOUS INSTRUCTION—ABSENCE OF PREJUDICE.—In such an action, the error, if any, of the trial court by using the expression "reasonably probable" with reference to the measure of damages for future detriment will not be held to have resulted in a miscarriage of justice where the succeeding parts of the instruction contain a pronouncement of the correct rule, and the evidence as to the nature and extent of plaintiff's injuries is such that, if he is entitled to recover any sum, it would be difficult to find a basis for reducing the amount below that of the judgment.

---

(1) 28 Cyc., p. 37, n. 19; 29 Cyc., p. 436, n. 50.   (2) 4 C. J., p. 864, n. 33; 28 Cyc., p. 47, n. 10, p. 49, n. 47; 29 Cyc., p. 658, n. 54 New.   (3) 28 Cyc., p. 27, n. 23, p. 37, n. 20.   (4) 28 Cyc., p. 49, n. 49; 38 Cyc., p. 1634, n. 13, p. 1636, n. 16.   (5) 28 Cyc., p. 49, n. 49; 38 Cyc., p. 1634, n. 13, p. 1636, n. 16.   (6) 38 Cyc., p. 1634, n. 13, p. 1636, n. 16.   (7) 28 Cyc., p. 34, n. 94, p. 49, n. 49. (8) 3 C. J., p. 735, n. 51; 4 C. J., p. 719, n. 36, p. 1032, n. 36, p. 1045, n. 48.

APPEAL from a judgment of the Superior Court of San Joaquin County.   D. M. Young, Judge.   Affirmed.

---

6.   See 3 Cal. Jur. 996.
7.   See 3 Cal. Jur. 998.
8.   See 8 Cal. Jur. 912.

The facts are stated in the opinion of the court.

John L. McNab and Louttit & Stewart for Appellants.

Foltz, Rendon & Wallace for Respondent.

FINCH, P. J.—The defendants have appealed from the judgment herein in favor of plaintiff for damages on account of injuries suffered by him through the negligence of defendants. The jury returned a verdict in the sum of $4,500 and judgment was entered for that amount. The defendants moved for a new trial and the same was denied upon condition that plaintiff consent to a reduction of the judgment to $3,500. Such consent was filed in due time and the amount of the judgment was reduced accordingly.

Eldorado Street in the city of Stockton runs north and south and Poplar Street crosses it at right angles. The former is 55 feet 4 inches wide and the latter 39 feet 4 inches. There is a double street-car line on the former and also on the latter from the intersection west. Measurements taken westerly across Eldorado Street are as follows: From the east curb to the east rail of the north-bound track 20' 0", thence to west rail 5' 1", thence to east rail of south-bound track 4' 10", thence to west rail 5' 1", thence to west curb 20' 4".

Immediately prior to the accident which resulted in plaintiff's injuries, a north-bound street-car stopped a short distance south of the intersection to permit passengers to board and alight and the defendant Beauregard, driving a motor hearse belonging to defendant Godeau and also going north, stopped a few feet behind the street-car and to the right of the east track. When the car moved forward again the hearse followed and turned to the west in the intersection. At the time the street-car started forward the plaintiff and a companion were on the west side of the street, at a point some distance north of the intersection, traveling south on motorcycles, the plaintiff being to the left of his companion. The hearse and plaintiff's motorcycle collided at a point near the southwest corner of the intersection, resulting in the injuries to plaintiff for which damages are claimed. The complaint alleges negligence on the part of defendants as follows: "That at said time and place, said defendants drove and operated said automobile carelessly, recklessly and negli-

gently, in this, that said defendant, J. B. Beauregard, in approaching said intersection from the south on Eldorado Street and in turning to the left into Poplar Street failed and neglected to run beyond the center of such intersection and pass to the right thereof before turning said automobile to the left, and solely by reason of such careless, reckless and negligent driving of and by said defendants, said plaintiff was seriously hurt and injured.''

[1] From the evidence it clearly appears that the driver of the hearse turned to the left before reaching the center of the intersection. Such violation of the law constituted negligence *per se*. [2] The defendants, however, pleaded contributory negligence on the part of plaintiff. It is now contended by appellants that the evidence conclusively shows that the plaintiff was guilty of contributory negligence. The jury, in returning a verdict for the plaintiff, and the court, in denying a motion for a new trial, impliedly found in favor of the plaintiff upon that issue. The burden of proof was on the defendants to show contributory negligence. To sustain such burden and to overcome the implied finding of the jury and of the trial court would require very clear proof.

The plaintiff testified that as he was proceeding south, on the west side of the street, at a speed of fifteen miles an hour, ''there was a street-car ahead of me in an angling way and a machine behind it. I guess there was, because when the car came head-on, the machine came behind it and just hit me. . . . The street-car hid the hearse from my view. . . . The hearse was going west. . . . I did not see it until it got by the street-car. . . . It was right on me before I had a chance to turn. . . . I was looking ahead. I did not expect anything coming from that direction. . . . It hit me. . . . I didn't hit it.'' The witness further testified that he was on the south car track on Poplar Street when he first saw the hearse. His companion gave similar testimony as to the movements of the respective vehicles. He testified that his speedometer showed that he and the plaintiff were traveling at fifteen miles an hour. He escaped injury by running his motorcycle over the curb and on to the sidewalk. Other witnesses testified that the motorcycles were going twenty-five miles or more an hour. Witnesses estimated the speed of the hearse at from four to ten miles an hour. When the hearse was brought to a stop it was headed southwest. The driver of the hearse testified that when he was ''about half-

way across the west track," traveling at four or five miles
an hour, he saw plaintiff's "motorcycle coming at a very
fast gait. I knew there would be an accident, and to avoid
the accident I turned to my left, a sharp turn, and went
towards the curbing." The plaintiff testified that he was too
far across Poplar Street, when he first saw the truck, to turn
west on that street, and also that his companion's motorcycle
was immediately to his right, making it impossible for plain-
tiff to turn west.

Whether the plaintiff was guilty of contributory negli-
gence, under the circumstances shown by the evidence, was
clearly a question for the jury. **[3]** While nearing and
entering the intersection, ordinary care required plaintiff
to look to the left for approaching vehicles. Having satis-
fied himself of the absence of danger from that direction, it
was natural for him to look to the right for east-bound
vehicles. He had the right to assume that no vehicle would
approach him from the left beyond the medial line of the
intersecting street. Of course, this does not mean that he
had the right to proceed blindly, in reckless disregard of
obvious danger, for it was his duty to exercise ordinary care,
even though the negligence of another caused the danger.
**[4]** In this connection the court instructed the jury that
the plaintiff "had a right to assume that any person driving
from the south on Eldorado Street and desiring to turn to
the left or west on Poplar Street would obey the law and
run beyond the center of the intersection of said streets
passing to the right thereof, before making such turn."
Appellant contends that the effect of this instruction upon
the minds of the jurors was "that the plaintiff did not and
was not required to see that which he could have seen with
the exercise of ordinary care." There is no merit in the
contention. Two instructions proposed by defendants, and
following immediately after the one quoted, told the jury in
effect that even if the driver of the hearse violated the law
in turning into Poplar Street, still the plaintiff could not
recover if the exercise of ordinary care on his part would
have prevented the accident.

**[5]** It was admitted at the trial that defendant Beaure-
gard was in the employ of defendant Godeau at the time of
the accident. The court instructed the jury at plaintiff's
request: "If you are satisfied from the evidence that at the

time of the collision the defendant J. B. Beauregard was acting within the scope of his employment and doing what his employer had directed, and any damage resulted therefrom, J. S. Godeau is responsible therefor, whether the damage be occasioned by negligence or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner." It is urged that the instruction is erroneous because it "ignores the essential ingredient that the doing of the thing in an unlawful manner must be, (1) the approximate cause of the injury, and (2) the plaintiff must not be guilty of contributory negligence." It is apparent that the instruction was not intended as a statement of the elements necessary to a recovery, but of the employer's liability for the acts of his employee within the scope of the employment. Other instructions very fully and clearly cover the questions of proximate cause and contributory negligence, and, in view thereof, it does not appear possible that the jury could have been misled by the one of which complaint is made.

[6] The court instructed the jury that if the driver of the hearse turned to the left in violation of the law "that in itself establishes negligence . . . and it is not necessary that the plaintiff make any further showing of negligence in defendants in order to recover, if you find that such negligence was the approximate cause of the injury sustained by the plaintiff." Complaint is made that this instruction also omits the element of contributory negligence. Appellants cite, in support of their contention, the case of *Stephenson* v. *Southern Pac. Co.*, 102 Cal. 143, 149 [34 Pac. 618, 621, 36 Pac. 407]. In that case the court instructed the jury: "If the jury believe from the evidence that the defendant was guilty of negligence as charged in the complaint, and that the plaintiff was injured thereby, your verdict should be for the plaintiff." The instruction was held to be erroneous in that it "entirely ignores the question of contributory negligence on the part of plaintiff." When, as in the case cited, an instruction purports to state the elements which will justify a verdict, no necessary element should be omitted therefrom. None of the foregoing instructions, however, purport to state all of such elements. Another instruction was given by the court which did purport to state the elements which would justify a verdict for plaintiff, and in that instruction the element of contributory negligence was not omitted. In at

least four separate instructions, the court told the jury that if the plaintiff was guilty of negligence which contributed to the accident he could not recover, even though the defendants were guilty of negligence which also contributed thereto.

[7] Complaint is made of the court's refusal to give the following proposed instruction: "If you believe from the evidence in this case that the plaintiff Robert Towne was farther from the point of intersection of their paths than the defendant Beauregard, then it was the duty of said Robert Towne to yield the right of way to said Beauregard." The accident occurred on the eighth day of April, 1922. The Vehicle Act of 1915 was then in force. (Stats. 1915, p. 397.) Section 20 of the act as amended in 1919 (Stats. 1919, p. 215), in so far as applicable, reads as follows: "(f) . . . The operator of a vehicle shall yield the right of way at the intersection of their paths to a vehicle approaching from the right unless such vehicle approaching from the right is further from the point of the intersection of their paths than such first named vehicle. . . . (i) All vehicles approaching an intersection of a public highway, with the intention of turning thereat shall in turning to the right keep to the right of the center of such intersection, and in turning to the left shall run beyond the center of such intersection, passing to the right thereof, before turning such vehicle toward the left." The proposed instruction is manifestly erroneous. It states, in effect, that even though the driver of the hearse had violated the law by driving on the wrong side of the street, this very violation of the law gave him the right of way over the plaintiff, who was on the proper side of the intersecting street, because it brought him closer to the point of intersection of his unlawful path with the lawful path of the plaintiff. To so hold would be to place a premium upon "cutting corners." Where one person has so violated the law, the circumstances may be such, of course, in case of an accident, as to show contributory negligence on the part of the other party to the accident or to require the application of the doctrine of the last clear chance.

[8] Upon the measure of damages the court gave an instruction in the language of one approved in *Hersperger* v. *Pacific Lumber Co.*, 4 Cal. App. 460, 467 [88 Pac. 587, 591], and in *Lonnergan* v. *Stansbury*, 164 Cal. 488, 493 [129 Pac. 770, 772]. In the latter case it is said: "The

phrase 'reasonably probable' may well be omitted from all such instructions and the statutory requirement of the Civil Code (sec. 3283) strictly adhered to. That section declares that a plaintiff is entitled to damages for 'detriment resulting after the commencement thereof or *certain to result* in the future.' But the instruction here in question, while using the unhappy phrase 'reasonably probable,' sums up its declaration of the law with the pronouncement of the correct rule.'' In *Richman* v. *San Francisco etc. Ry.,* 180 Cal. 454, 460 [181 Pac. 769], the use of the words ''reasonably probable'' in the same connection was held to be ''clearly erroneous.'' In that case, however, the succeeding parts of the instruction did not state the correct rule. The use of the words ''reasonably certain'' to result in the future is held to be in accord with the provision of section 3283 in *Wiley* v. *Young,* 178 Cal. 681, 686 [174 Pac. 316].

In the same instruction the court told the jury that if the plaintiff was entitled to recover he should be awarded ''compensation for all expenses actually paid or incurred for medicine and doctor's bills and hospital and nurse's bills, not exceeding the amount claimed therefor in the complaint.'' Appellants argue that the plaintiff was entitled only to a reasonable sum for such expenses, but not necessarily the amount actually paid therefor. At the trial it was stipulated by counsel for defendants that ''the hospital bill was $664.19'' and neither party introduced any proof upon the amount of the bill or the reasonableness thereof, or in any way questioned the same. Appellants cannot now be heard to say that the proof is lacking upon that issue. The undisputed testimony shows that the reasonable value of the doctor's services was the sum of $1,500, but that he charged but $800 therefor, the amount alleged in the complaint.

Conceding that the words ''reasonably probable'' in the foregoing instruction are inaccurate and may have tended to mislead the jury, the amount of the judgment is so small that the court cannot say that the error has resulted in a miscarriage of justice. Deducting from the judgment the item of $800 for the doctor's bill and the stipulated sum of $664.19 for hospital expenses leaves but a little over $2,000 as the amount awarded for pain and suffering and permanent injuries. The attending physician testified that

plaintiff's injuries consisted of a compound fracture of both bones of the left leg below the knee; that such a fracture is exceptionally painful; that three operations were necessary to effect a cure; that the plaintiff suffered intense pain for more than three months and was unable to leave the hospital for more than five months; and that as a result of the injury the left leg is permanently one-fourth of an inch shorter than the right. If the plaintiff is entitled to recover any sum, it would be difficult to find a basis for reducing the amount below that of the judgment. The other errors assigned are of minor importance and there is no merit in any of them.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 5, 1925.

All the Justices concurred.