[Civ. No. 3955. Third Appellate District.—December 9, 1929.]

RICHARD RINKER, Respondent, v. J. C. CARL et al., Appellants.

W. I. Gilbert for Appellants.

Bertrand J. Wellman for Respondent.

PLUMMER, J.—Plaintiff had judgment against the defendant J. C. Carl in the sum of eight thousand dollars as compensation for injuries suffered by him when the plaintiff was injured by an automobile driven by said defendant. From this judgment the defendants appeal.

The transcript shows that on or about the 22d of November, 1925, during the night-time, the plaintiff was driving an automobile in a westerly direction along that certain highway in Los Angeles County known as and called Los Feliz Boulevard; that when the plaintiff reached a certain point on said boulevard where it is intersected by Griffith Park Drive the plaintiff turned his car across the boulevard in a southerly direction and parked the same at the side of Griffith Park Drive. His purpose in doing so was to enable him to examine a signboard on the north side of Los Feliz Boulevard, giving directions as to how to reach certain cities. The plaintiff, after parking his car in the Park Drive, started to cross Los Feliz Boulevard from the southerly side thereof, proceeding in a general northerly direction toward the point where the signboard was stationed. The paved portion of Los Feliz Boulevard is shown by the testimony to be from eighteen to twenty feet in width. After crossing a portion of the paved part of the boulevard, the plaintiff was run down and injured by an automobile owned and then operated by the defendant J. C. Carl. The plaintiff was severely injured, but as no argument is made as to the excessiveness of the verdict, the extent of the injuries need not be considered.

It is contended on the part of the appellants that the testimony shows no negligence on the part of the defend-

ant J. C. Carl, but does establish the fact of negligence on the part of the plaintiff. The testimony of witnesses called and examined on behalf of the defendants would indicate that the plaintiff was injured while he was on the southerly, or what would be the right one-half of the paved portion of the highway for an automobile driver when propelling his machine in an easterly direction, the contention of the appellants being that the plaintiff stepped in front of the machine driven by the defendant J. C. Carl at such a close distance to the automobile that it was impossible for the same to be stopped prior to the running down of the plaintiff. Upon this theory the appellants have argued the cause. If this version of the occurrence had been accepted by the jury, then and in that case we would unhesitatingly say that the verdict was sufficiently sustained by the testimony. We may admit that upon the record the preponderance of the testimony appears to be in favor of the appellants, but the rule is well established that where there is testimony in the record which, if believed by the jury, is sufficient to sustain the verdict, appellate courts are bound by the findings of the jury. The testimony in this case, as appears from the transcript, is in sharp conflict, and when there is a conflict, all we can legally do is to examine the record and ascertain if there is testimony upon which the verdict may rest if accepted by the jury. The chief contention made by the appellants is that the plaintiff, as he walked across the portion of Los Feliz Boulevard, did not look in both directions. In support of this contention a number of cases are cited, which, however, no longer state the law in California. It is claimed on the part of the plaintiff that he was injured while on the northerly half of the paved portion of the highway; that at the time of the injury the defendant J. C. Carl was driving his automobile in an easterly direction, and that the law required his automobile, at the time and under the circumstances, to be driven on the southerly side of the paved portion of the boulevard. Before quoting the testimony upon which the verdict of the jury may be sustained upon this theory, we will quote section 122 of the California Vehicle Act (Stats. 1923, p. 557), which reads: "On all occasions the driver of a vehicle shall drive the same on the right half of a public highway and close to the right-hand edge or curb of such highway, unless it is imprac-

ticable to travel on such side of the highway, and except when overtaking and passing other vehicles, in which latter case the vehicle may be driven on the left side of the highway if such highway is clear and unobstructed for at least 100 yards ahead.'' The amendment to this section by the legislature in 1929 (Stats. 1929, p. 540) does not change this portion thereof, and the section as quoted was in full force and effect at the time of the injury complained of. There is no showing in the transcript that at the time of the injury it was impracticable to travel on the right side of the highway. It is not claimed that the appellants were passing any other vehicles, and there is no testimony in the record relative to the left side being clear and unobstructed, as required by the section. With this statement of the law in view, we maw now consider the testimony of the plaintiff which relates directly to the injury, and which, if believed by the jury, is sufficient to sustain the verdict on the theory that the defendant J. C. Carl was driving his automobile to the left of the center line of the paved portion of Los Feliz Boulevard at the time of the injury. The testimony of the plaintiff relative to the circumstances of the injury is as follows: ''After I turned my machine off onto Griffith Park drive I went back across Los Feliz to look at the road sign. I wanted to go to Santa Monica and wanted to see this sign because I was not familiar with the road there. When I started walking across Los Feliz Boulevard there was considerable traffic. I looked in both directions and thought that I had time to get across and started across. I saw cars coming from my left, but the nearest car was a good way down; it must have been pretty near a block. I started to cross Los Feliz and I was just past the center of the road when I was hit. I was four or five feet from the north edge of the pavement. As I passed the center of the road I looked at the other direction towards my right towards Glendale I saw cars coming. Then the next thing I got hit by a car coming from the left. The place where I got struck is down grade. I couldn't say what part of my body was struck. I was not facing this machine when it struck me; it came from the back or my left.'' As corroborative of this testimony the witness Bessie Beal testified as follows (speaking of the north side of the boulevard):

"There was a little ditch there. Mr. Rinker was lying on the edge of the boulevard; on the edge of the north side of the boulevard and about two feet from the little ditch. The ditch is about two feet from the edge of the boulevard as I remember. He was lying within two feet of the ditch. I believe they were just picking him up as I was crossing the street. I could see where he was lying before I crossed the street. I saw him by the headlights of other cars. He was lying there before I got to him and they picked him up." This testimony shows the position of Mr. Rinker's body after being run down by the automobile. There is testimony in the record to the effect that the body rolled some ten feet downhill after being struck by the automobile, but there is no testimony to the effect that it rolled either in a southerly or northerly direction. Consequently, in connection with the statement of the plaintiff that he was on the northerly portion of the paved highway at the time he was struck, the testimony of the witness Beal, that his body was within two or three feet of the northerly edge of the paved portion, was evidence for the jury to consider in determining where the automobile and the plaintiff were at the the time of the impact, and whether the automobile was or was not on the northerly half of the paved highway, and in a position where it legally had no right to be.

■ Basing their contention upon the statement of the plaintiff that he did not look to the left after reaching the center of the paved portion of the highway, appellants cite the cases of *Niosi* v. *Empire Steam Laundry,* 117 Cal. 257 [49 Pac. 185], *Mayer* v. *Anderson,* 36 Cal. App. 740 [173 Pac. 174], *Sheldon* v. *James,* 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8], *Moss* v. *Boynton,* 44 Cal. App. 474 [186 Pac. 631], and a few others where similar circumstances are involved, and urge upon the court that as the plaintiff did not look to the left after reaching the medial line of the paved portion of the highway, he was guilty of contributory negligence. These cases, however, do not cite the law applicable to the circumstances here presented. By reason of the testimony which we have quoted and the verdict of the jury, we must hold that the plaintiff was injured while on the northerly half of the paved portion of the highway, by an automobile driven by the defendant J. C. Carl, traveling in an easterly direction, and that the law at that

time, under the circumstances, required the automobile to be on the southerly half of the paved highway. Under these circumstances it is now well established that it is not contributory negligence as a matter of law for one crossing a paved highway from the south to the north, not to look to the left or to the west after reaching the medial line; that the rules of the road require east-bound traffic to travel on the southerly half and west-bound traffic on the northerly half, and it is the duty of the pedestrian when he reaches the southerly line walking northerly, to look to the right and safeguard himself against stepping in front of a west-bound automobile. In California Jurisprudence, 1928, Permanent Supplement, on page 197 of the *addenda*, considering the subject of automobiles, we find the rules of law which we have referred to stated as follows: "If the established usage required the driver of vehicles to proceed on the right side of the highway or street, the plaintiff is entitled to recover on proof that the injured person looked in the direction from which cars, proceeding in conformity with the law or custom, might have been expected to approach. A pedestrian has a right to expect the driver of an automobile to conform to the customary traffic laws. Thus, a judgment for the plaintiff is proper where it appears that in traversing the street he looked to the left and was injured by the defendant's vehicle which was approaching from the right on the left side of the street, or where the evidence shows that after having arrived at the center of the way, he looked to the right and was struck by the vehicle which was being driven on the wrong side of the street. He had the right to assume that no vehicle would approach him from the left beyond the medial line of the intersecting street."

This court, in the case of *Towne* v. *Godeau,* 70 Cal. App. 148 [232 Pac. 1010, 1011], where a similar question was involved, held that the plaintiff had a right to assume that no automobile driver would run him down from the left, or what, under the circumstances of that case, would be driving an automobile on the wrong side of the street. This, of course, does not give the plaintiff the privilege of reckless disregard of his own safety or entitle him to heedlessly place himself in a position of danger. But if the testimony accepted by the jury which we have quoted, is true, neither

of these latter conditions is presented. The cases cited by the appellants to which we have heretofore referred are all limited in their application and shown to have no bearing upon the issue before us. In the case of *Burgesser* v. *Bullocks,* 190 Cal. 673 [214 Pac. 649], the circumstances of that case, as applied to the case at bar, show that the authorities cited by the appellants are inapplicable, and it was simply a question for the jury as to the plaintiff's contributory negligence at the time he was injured by the automobile driven by the defendant.

Again, in the case of *Nickell* v. *Rosenfield,* 82 Cal. App. 369 [255 Pac. 760, 762], the contention that the injured party should have continually looked to the left, or should have looked in both directions for traffic, or otherwise be held guilty of contributory negligence, was not sustained. It was there held, just as we have here stated, that the duty of the pedestrian is to look in the direction from which traffic is to be expected. Failing so to do he would be guilty of contributory negligence; but if he fails to observe an automobile approaching from the wrong direction, the pedestrian is not guilty as a matter of law for failing to observe the same, and if the jury finds in favor of the plaintiff, under such circumstances the verdict will not be disturbed on the ground that the plaintiff did not look in the direction from which traffic was not to be expected.

In the case of *Henry* v. *Lingsweiler,* 81 Cal. App. 142 [253 Pac. 357], this court held as follows: "A pedestrian crossing a street near an intersection has a right to assume that no vehicle will approach him from the left beyond the medial line of the street." In that case the plaintiff was crossing the street in the direction that an automobile approaching from the left would be traveling on the wrong side of the street. To the same effect is the case of *Wright* v. *Foreman,* 86 Cal. App. 595 [261 Pac. 481], and *Rignell* v. *Font,* 90 Cal. App. 730 [266 Pac. 588]. Other cases might be cited, but the rules are well established, just as we have stated them, by the authorities cited.

It is further urged that the court erred in its instructions to the jury. An examination of the instructions, however, reveals that the court very carefully instructed the jury, stating the law clearly and accurately upon the questions presented to them for consideration. The court

in its instructions stated, among other things, the law correctly concerning contributory negligence, and the duty incumbent upon a pedestrian when about to cross a highway, stating, in substance, that in crossing a highway it is the duty of the pedestrian to safeguard himself from the traffic reasonably to be expected upon the side of the highway, while crossing; that before he reached the center of the street in this case it was the duty of the plaintiff to look for traffic coming from the west or from his left, and as he crossed the medial line of the paved portion it was his duty to look out for automobiles coming from the east or from his right, and that he had a right to assume, until apprised to the contrary, that automobiles traveling eastward would travel on the southerly half of the paved portion of the highway, and that automobiles being operated on the wrong side of the highway would give ample warning of their approach. The court also instructed the jury that a person driving a vehicle on the public highway was required to drive the same at all times in a careful and at a prudent rate of speed, and not greater than is reasonable and proper, having due regard to the traffic, surface, width of the highway, etc. The court further instructed the jury that when one is about to cross the highway, or is crossing a highway, he is bound to use reasonable care, to look and listen as he proceeds across said road, in order that he may be able to avoid colliding with others exercising the common privilege of traveling on the highway. The court also instructed the jury that when the plaintiff entered upon the boulevard in question it was necessary to look to the left to protect himself from automobiles approaching from that direction, and gave to the jury the following instruction which, as we have shown by the authorities, is far more favorable to the defendants than they were entitled to under the law: "You are instructed that neither a pedestrian nor the driver of a vehicle has any right over a boulevard superior to the other, but each has the same right in common with the other, and in its exercise each is bound to use ordinary care for his own safety. Accordingly, one thus traveling across a boulevard, such as the one in question, is in duty bound to be alert and to look both ways, with ordinary care, for the purpose of ascertaining whether or not he might be struck by an approaching vehicle, and if the plaintiff failed

to do this, he was guilty of negligence, and if such negligence directly or proximately contributed to the happening of the accident in any degree, however slight, your verdict will be for the defendant, notwithstanding you may believe the defendant was guilty of negligence at the time and place of the accident.'' This, of course, is not a correct statement of the law. The plaintiff was not under obligations to look both ways at all times. He was under obligations to look to the left while crossing the southerly half of the boulevard and to look to the west when crossing the northerly half thereof. A failure to look both ways while he was crossing the respective halves of the boulevard did not, and would not, constitute negligence *per se*. At most it would only present the question of contributory negligence to the jury as a matter of fact, by reason of the rule prevailing that automobile drivers, under ordinary circumstances, must propel their cars on the half of the highway prescribed by section 122 of the Motor Vehicle Act as well as the authorities which we have here cited.　■　Complaint is made that the court refused to instruct the jury that under the law the defendant J. C. Carl was entitled to drive his automobile at a speed of thirty-five miles per hour at the place of the collision. No contention is made that the injury was caused to the plaintiff by reason of the excessive speed of the automobile. The injury, as found by the jury, must have resulted from the automobile being driven on the wrong side of the road and where it should not have been, and where the plaintiff could not have reasonably expected it to be. Under these circumstances the fact that the owner of the automobile, under the law may have been entitled to drive at a greater rate of speed than it was then moving had it been on the proper side of the highway, is wholly immaterial. The refusal to give other instructions based upon the cases cited by the appellants, which we have stated do not state the rules of law now prevailing in this state, need not be considered, as it would unduly extend this opinion and serve no useful purpose. It is sufficient to say that a reading of the instructions given by the court to the jury shows that the appellants suffered no injury therefrom.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.