ABEL et ux. v. GULF REFINING CO.*

No. 4163.

Court of Appeal of Louisiana. Second Circuit. Second Division.

Jan. 14, 1932.

*Rehearing granted February 16, 1932.

Chris Barnette, of Shreveport, for appellants.

Thatcher, Browne, Porteous & Myers, J. S. Atkinson, and F. E. Greer, all of Shreveport, for appellee.

TALIAFERRO, J.

Plaintiffs, J. C. Abel, Jr., and his wife, Margaret Flood Abel, bring this suit to recover damages done to their automobile, and for personal injuries sustained by Mrs. Abel, as a result of a collision between plaintiffs' Ford sedan and defendant's large truck or tank wagon, which occurred at intersection of Olive street and Rogers alley, in city of Shreveport, La., on April 11, 1930, between 3 and 4 o'clock, p. m.

Plaintiffs allege that their automobile, at time of collision, was being operated by Mrs. Abel at a lawful rate of speed, going west on Olive street, and that defendant's truck was going east on same street; that as the car and truck "met and were in the act of passing, the truck, without any warning or signal, negligently and unlawfully, made a very sharp, abrupt, sudden turn to the left, at same time greatly increasing in speed, causing same to run directly and violently into petitioners' car, striking same on left side"; that the sedan was on its extreme right-hand side of the street, parallel to and almost against the curbing; that the movement of the truck was so sudden that the accident could not have been avoided by Mrs. Abel; that defendant's employee, operating said truck or tank wagon, failed to keep a proper lookout and drove the truck at a speed in excess of that authorized by law.

It is alleged by plaintiffs that serious and permanent injuries to Mrs. Abel were caused by the impact of the two vehicles.

Defendant admits the collision between its truck and plaintiffs' car, but denies that it was caused by the negligence of the truck's operator, defendant's employee; that the accident was caused entirely by the fault, negligence, and want of skill of Mrs. Abel in this, to wit: That she was driving her car at time of accident and immediately prior thereto at a rapid and reckless rate of speed, without keeping a proper lookout as to traffic moving ahead of her and towards her on Olive street; that respondent's truck was a large and cumbersome one and could have easily been seen for a distance of five hundred feet by Mrs. Abel, and if not seen by her it was her fault; that it was impossible for the truck to have been turned suddenly into Rogers street, as alleged by plaintiffs; that she could have avoided running her car into the truck had she applied her brakes, slowed down, and driven to her left, around and to the rear of the truck; that the truck at the time and immediately prior to the collision was being driven in a careful and lawful manner, and before the operator turned it into Rogers street he held out his hand and slowed down in order to make the turn, and had Mrs. Abel kept a proper lookout and had her car under control, as she should have done, she could and would have prevented the accident; and in her failing to do so she was grossly negligent and careless and therefore not entitled to recover for the damages and injuries to her on that account.

Defendant further avers that, if said collision was caused to any extent by the negligence of its employee, which is denied, the negligence of Mrs. Abel contributed thereto, and her contributory negligence is pleaded in bar of her right to recover; and, in any event, she had the last clear chance to avoid the accident and failed to do so.

The demands of plaintiffs were rejected, and they have appealed.

We have studied the evidence in this case carefully and have reached the same conclusion as did the lower court on the questions of negligence on the part of Mrs. Abel and defendant's driver.

The truck was moving up grade on Olive street at a slow rate of speed and made a gradual left turn into Rogers street for the purpose of delivering kerosene to a customer whose place of business fronted on that street and extended up Rogers street. The truck's front end had entered Rogers street a few feet and had stopped, or was practically stopped, when the Abel car ran into it, striking the right front wheel on the side, and the bumper. The driver of the truck testified that he brought the truck to a stop after realizing plaintiffs' car was going to run into it, preferring to have the truck struck towards the front end rather than towards its rear, on which was located the gas or kerosene tank.

Mrs. Abel admitted that she observed the truck at least half a block distant and sounded her horn. We are inclined to believe that she did this because of the truck's movement in preparing to enter Rogers street. The fact of her approaching the moving truck should not have provoked her to blow her horn. She admits she did not deviate from her line of

travel, did not slow down, nor apply the brakes, but ran the car headlong into the truck. Her negligence was the proximate cause of the accident, we are convinced beyond any doubt.

The reasons of the learned judge of the lower court for rejecting plaintiffs', demands are in the record. These reasons so clearly and correctly analyze and resolve the evidence touching the negligence invoked by both sides, we have decided to adopt them for our own and base judgment thereon. They are as follows:

"The present suit grows out of a collision between a Ford sedan driven west on Olive street, and a truck owned by the defendant and being driven east on Olive street. The truck was making a left-hand turn into Rodgers street at the time of the accident. Rodgers street is a narrow unpaved street entering Olive street at right angles, but does not cross that street. The paved portion of Olive street is about twenty-eight feet wide and Rodgers street is about eighteen. feet from curb to curb.

"Mrs. Abel was alone in her car and was driving on her extreme right side, there being no dispute about this, and it was downgrade the way she was going. The truck was going upgrade, traveling either near the center or on its right side before attempting to make the turn, and it is only a short distance from there to Fairfield avenue, which is a stop street. The truck is equipped with a governor which does not permit it to make, at best, more than eighteen miles per hour. It weighs, loaded (as it was that day), about 12,-000 pounds, while a Ford is a light car, at least comparatively speaking. The truck is a large cumbersome affair, which, according to the testimony of the driver, cannot be suddenly or quickly turned. There is no testimony showing the contrary, and from the nature of the vehicle this must be true.

"The situation of the truck after the accident, as shown by the pictures in evidence, and the testimony in regard to same, shows plainly, to our mind, that it did not make a sudden, quick turn into Rodgers street. The angle shown in the pictures and the testimony shows this. The testimony of the driver is to the effect that he was not making over eight miles per hour while he was attempting this turn, and we can readily believe that to be true. He says that he had stopped entirely when the impact occurred, but we do not think this very important, for the fact remains that he was not stopped by the impact, but by the application of the brakes. The situation of the cars after the accident shows this. The driver of the truck testified that he held his hand out as a signal for a left turn; Mrs. Abel says she did not see this, but we do not think this is impor-

tant. There is one way in which the driver of the truck was. plainly negligent; he cut the corner or did not go beyond the center of the street intersection before making his left turn. He says that it was practically impossible for him to do that on account of the vehicle he was driving. Then, if such be the case, this offers no excuse, for it was his legal duty not to attempt to make a left turn at that point, but to approach from some other direction.

"This act of negligence is not a matter of allegation, but the testimony was brought out without objection, and it must be considered. But counsel for defendant says that the city ordinance was not offered in evidence to show such to be against the law. That is true, but such is likewise a violation of the state law, and a state law does not have to be offered in evidence. Section 18 of Act No. 296 of 1928 covers the situation, and this law is applicable in cities as well as on rural highways. Section 89 of the same act shows that it may not apply to cities over 15,-000 population, but this section was changed by Act No. 2 of the Extra Session of 1929 removing this restriction. A violation of law is negligence, and actionable negligence in this case, for we are satisfied, from the evidence, that the accident would not have happened except for this negligence.

"Up to this time, we have discussed only the acts of the defendant. We must now take up those of plaintiff to see what part she played in this accident, for if she was guilty of contributory negligence there can be no recovery in this case. At this point, we wish to quote from the testimony of Mrs. Abel, as she and the driver of the truck were the only eyewitnesses.

"On direct examination, page 5, she said:

" 'Q. After you blew your horn what, if anything, did the truck driver do? A. He didn't do anything but cut in front of me.

" 'Q. Just state to the Court, Mrs. Abel, the manner in which that was done? A. Well, I took my foot off of the accelerator—I didn't use the brakes much on my car—I didn't think it was necessary—I wasn't speeding and had this car been anything but a Gulf Refining Company truck I don't suppose I would have blown the horn but when he cut in just like to make a left turn after I had blown my horn he made a movement that to me looking at him say half a block or a quarter of a block, I thought he was pulling to the right and never did think he would turn to the left but instead he turned to the left directly in front of me and hit me in the left side of my car, his front wheels. He didn't pull to the right at all."

And on cross-examination, page 22 et seq.:

" 'Q. You blew your horn when you saw the truck coming? A. Yes.

"'Q. When you blew your horn where was the truck at that time? A. In the middle of the street.

"'Q. What did you notice about the truck at that time that caused you to blow your horn? A. It's size. I never would have blown my horn had it been an ordinary car. It was such a large thing. I could have passed it but it was a great big, large—a big truck. I couldn't miss seeing it and I blew my horn to attract his attention to get him to move over a bit and let me pass.

"'Q. How far were you from that truck when you first saw it? A. About half a block.

"'Q. The truck was then in the middle of the street? A. Yes. It might not have been half a block if you call Rodgers Street a block. It is in the block from, about the middle of the block, I call it, from Elizabeth to Fairfield, which is a block, I call it.

"'Q. About how many feet or yards were you from the truck? A. I can't tell you that.

"'Q. Taking the average city block, how many feet were you from the truck when you first saw the truck? A. When I first saw it?

"'Q. Yes. A. Well, not quite half a block. Not quite half a block.

"'Q. When you blew the horn how many feet were you from the truck? A. I was quite a distance from the truck. I blew my horn when I saw the truck.

"'Q. You blew your horn half a block from the truck? A. A little less than half a block.

"'Q. Did you blow your horn again when you got closer? A. When I got close to the truck I had collided with it.

"'Q. When you blew your horn then you saw the truck, is that right? You were looking at the truck. A. I saw the truck coming up the middle of Olive street, yes.

"'Q. Now, as you were moving along you kept your eyes on the truck, did you not? A. As I moved along I—

"'Q. (Interrupting) You continued to keep your eyes on the truck after you blew your horn? A. No, I kept my eyes on the road after I saw the truck.

"'Q. You took your eyes off of the truck then? A. Yes.

"'Q. And you did not notice the truck any more after you blew your horn?' That is what I am getting at. A. I don't remember whether I noticed it any more or not.

"'Q. You don't know whether you saw the truck any more after you blew your horn, is that right? A. No.

"'Q. Did you think the truck would get out of the way after you blew? A. I thought surely he would. I imagined he would. In fact I think he made a motion to turn his car to the right or left. I saw his hand go over the steering wheel and naturally I thought he was going to pull a little bit to the right and let me by.

"'Q. And that is all you saw? You didn't notice the truck any further after that? A. No, not until I had collided with it. * * *

"'Q. You never put your foot on the brakes at all? A. No, I don't think I did. I didn't think it was necessary. I was not speeding.'"

"And again on re-direct examination, page 47:

"'Q. Mrs. Abel, Mr. Browne, in his cross-examination this morning asked you about whether or not after you saw the truck approaching from the opposite direction you took your eyes off of the truck. I believe you stated that you did. Did you mean to say that you did not watch where the truck was going? A. I blew my horn as a signal for him to move over. I couldn't very well keep from looking at the truck as long as I am keeping my eye on the road. I had the right of way and I was almost up against the curb at the time of the collision and when I was going toward him I saw him.

"'Q. What signal, or warning, if any, did you have that the truck was going to turn into the path of your car? A. I don't remember seeing him put his arm up to turn one way or the other. He didn't put out his hand. If I remember correctly, if I wasn't too stunned, I think I asked him why didn't he put out his hand if he was going to make a left-hand turn on the street.'

"While the estimate of the ordinary witness as to distance and speed is inaccurate at best, it is very evident that Mrs. Abel was quite a distance from the truck when she first observed it.

■■ "It is the duty of every driver of an automobile to have his car under control; it is his duty to maintain a lookout at all times, and especially are both of these principles true when approaching a street intersection.

"Mrs. Abel either observed the truck and watched it while she was driving a considerable distance or she did not do so. She testified both ways, so we cannot tell from her testimony. We are inclined to conclude that the testimony given on the original direct examination is correct, for if she had been watching the truck she was bound to have seen it making its slow, ponderous turn into Rodgers street in plenty of time to have stopped her car and avoided the accident; this, of course, provided she was not going at racing speed (which we are satisfied she was not, or the result would have been much more disastrous).

"If she was not watching, she should have been. A proper exercise of care on plaintiff's part would have avoided the accident.

"While we do not know at what speed plaintiff was going, yet it must have been consid-

erable. We have held already that the truck was making a slow, gradual turn into Rodgers street, and at the moment of impact was either stopped, or practically so. The Ford car (the front) was badly damaged, and the truck considerably so (considering its weight and size of parts).

"The testimony is to the effect that it took a great deal of force to cause that damage, and we can readily believe that. This force could only have been brought about by a fast-moving object. It was either the truck or the Ford. Considering the relative position of the two after the impact, the comparative weight of the two, the rebound of the Ford, and the damage done, we have no trouble in arriving at the conclusion that the truck was either stopped, or practically so, and that the force which caused the damage was brought about by the speed of the Ford. We do not know what that speed was, but it was sufficient to conclude that it was not under control. It was either that, or plaintiff was paying no attention to what she was doing. She says she did not use her brakes, for she says she was right on the truck when she saw it, it having made a swift, sudden turn directly in front of her. We do not think it was physically possible for the truck to have done this, considering its position after the impact."

A driver of an automobile must have his car under control, and maintain such lookout as to enable him to stop before striking another. Green v. Moore, 4 La. App. 495; Gouzien v. Feraci, 2 La. App. 115.

Motorist driving along city streets must have his car at all times under control, and even though another car turns out from the curb into the street in his path, he cannot recover if he is driving at an excessive rate of speed. Scholder v. Laundry & Dry Cleaning Service, Inc., 10 La. App. 786, 123 So. 170.

"One having right of way is not relieved from necessity of looking for approach of others." Johnson v. Item Co., 10 La. App. 671, 121 So. 369.

"Motorist having right of way could not drive directly in front of approaching vehicle and recover for injuries sustained." Moak v. Callo, 16 La. App. 552, 134 So. 763.

"When approaching a street intersection a motorist must keep a lookout ahead, operate his machine at a reasonable rate of speed, having regard for the traffic, have his machine under control, giving usual and timely warning of his approach; by the customary signals, exercise ordinary care generally, and conform to the requirements of statutes and ordinances." Berry on Automobiles (6 Ed.) vol. 1, § 218.

For the reasons herein assigned, the judgment of the lower court appealed from is hereby affirmed.

DREW, J., dissents.