68 P.(2d) 921

**GREENFIELD v. BRUSKAS.**

No. 3988.

Supreme Court of New Mexico.

May 18, 1937.

Rehearing Denied June 22, 1937.

Joseph Gill, John F. Simms, and D. M. Bushnell, all of Albuquerque, for appellant.

George C. Taylor, of Albuquerque, for appellee.

BRICE, Justice.

This action was brought to recover damages for the negligent killing of plaintiff's intestate. Certain of the facts, which are taken from the uncontested findings of the court, are as follows:

On the morning of the 8th day of October, 1932, at a few minutes before 8 o'clock, the deceased, Claire Frank, a young man twenty-one years of age, and his brother, Austin Frank, nineteen years of age, were riding a motorcycle, going east on Central avenue in the city of Albuquerque, up a 3½ per cent. grade, at a speed in excess of twenty, but less than twenty-five miles an hour. The motorcycle was equipped with a special seat larger than the ordinary seat, and Claire Frank was sitting in the back of the seat, while his brother, Austin, who was driving the machine, was sitting on the forward part of the seat and had hold of the handle

bars. Claire Frank was carrying a book and a package of drawing instruments in one hand and the other hand was around his brother's waist. Claire's feet were on the footboard provided for that purpose. The motorcycle was in good working order, and the brakes were in such condition as when applied they would slide the tires. Both boys were experienced motorcycle drivers, and each had owned a machine of that kind for a considerable period of time; each had taken part in driving around the city and in cross-country driving, and understood how to ride and handle a motorcycle.

It had been raining on the morning in question, but the shower had passed, the atmosphere was clear, and the asphalt paving on East Central avenue was still wet. The two boys were proceeding on the right side of the street, and as they approached the intersection of South Ash street with East Central avenue, the wife of the defendant was driving west on East Central avenue and approaching the intersection of South Ash and East Central, and was plainly seen by Austin Frank, who was looking east as he was driving in that direction.

The wife of the defendant, who was driving the automobile, turned left from Central avenue on Ash street and gave no signal with the horn of her intention to so turn. Austin Frank threw on the brakes of his motorcycle and swung it sharply to the left in an effort to go behind the automobile, and, due to the use of his brakes on a wet pavement and the making of the sharp turn to the left, the motorcycle skidded and swung around, coming in contact with the right rear wheel of the defendant's car, throwing the motorcycle and the riders to the pavement. By reason of the fall upon the pavement, Claire Frank suffered a broken leg, and was soon thereafter taken to a hospital, where, on the following morning, he died as a result of the accident, from a cerebral embolism or blood clot which lodged in his brain.

The authorities of the city of Albuquerque have not modified the state law with reference to turning at the intersection of South Ash and East Central avenue by placing buttons, markers, or other direction signs thereon.

The defendant is the owner of a De Soto automobile, of the kind and number specified in the complaint, which he kept for the use of himself and his wife for both business and pleasure, and the wife of the defendant was permitted at all times to drive the automobile, and at the time in question was using the car for the purpose of making a visit to her sister, who lived on the east side of South Ash street.

The plaintiff, Myrtle Greenfield, is the administratrix of the estate of Claire Frank, deceased, who died intestate, and brings this suit as such administratrix. Claire Frank left surviving him a father, who lives in Kansas, and two minor brothers, one nineteen years of age, and one fourteen years of age. Claire Frank was a senior in the University of New Mexico,

taking a course in mechanical engineering, was a member of an honorary undergraduate engineering fraternity, based on scholarship; was a boy of good habits, studious, diligent, and of upright life and deportment, and was interested in the education of his two younger brothers. He was employed by the State Health Laboratory at the University of New Mexico during the school term at $40 a month, and during the summer made $100 a month salary, besides certain extras in attending lawns and doing other work. He was in good health at the time of his death, and had an expectancy of forty-two years of life. The average earning power of a mechanical engineer in New Mexico and vicinity, for the first five years after graduation from college, is approximately $1,800 a year, and thereafter from $4,000 to $8,000 a year.

The evidence shows that Ash street begins at Central avenue running at right angles south therefrom.

The following findings of fact, requested by appellant, were refused by the court, and such refusal assigned as error:

"7. That as the two Frank boys approached the intersection of South Ash with East Central, their view was unobstructed, and they could see the wife of the defendant coming west on Central avenue, driving on the right side of the street going west.

"8. That the defendant's wife turned her car to the left before reaching the center of the intersection between Central and Ash, and without looking west, from which direction the two Frank boys were coming.

"9. That, at the time the defendant's wife crossed the center line of Central Avenue turning left, the motorcycle ridden by the two Frank boys had gotten past the center of the intersection of South Ash and Central, and, upon her making the left turn, (the remainder of this requested finding was adopted by the court).

"10. That, at the time Mrs. Bruskas turned left across Central Avenue, the motorcycle was about fifteen feet away."

"12. That, if the wife of the defendant, before turning left on Central Avenue, had looked west for approaching traffic, she could have seen the two Frank boys approaching on the motorcycle in time to have stopped and to have avoided the collision."

"21. That, at the time the defendant's wife turned left on Central Avenue, she did not make any sign or warning with her arm or hand of her intention to turn."

"23. That, at the time the defendant's wife turned her automobile left on Central Avenue and crossed the center line of Central Avenue, the motorcycle was so close that the application of its brakes could not stop it before a collision would result with the automobile."

The contention is that the court erred in refusing to make each of the requested findings.

In regard to requested finding No. 7, there is no evidence in the record that both boys

could see the wife of the defendant at the time mentioned, although the evidence shows that the driver, Austin Frank, could and did see Mrs. Bruskas at that time, and the court so found by his finding No. 10, incorporated in the facts we have set out. The district court did not err in refusing this request.

■ Regarding requested finding No. 8, the evidence of Mrs. Bruskas, the driver of the automobile in question, was as follows: She testified that she was going west on East Central avenue to her sister's home. That she saw a car coming and waited for it to pass; then she turned in and looked back up east Central, and when she looked around the boys' motorcycle was real close to her. That before she turned she held out her hand; that she did not see the motorcycle until she had already turned in, and until her front wheels were almost on Ash street; that they were even or past the curbing. She thought the motorcycle was close to the curb, which would be the south side of Central avenue. She never saw the motorcycle at the time she saw the car that passed in front of it; but this was before she turned across Central avenue. She came to almost a complete stop, waiting for the car to pass. It was near the intersection when she saw it. She had perfect control of her car and could have stopped it in less than a car length and was going only about six miles per hour.

"Q. When that car went by you you said you looked behind you but you did not look down Central again at all did you? A. No, not until I was clear turned.

"Q. Until you turned in in front of these boys you did not look? A. No, they did not see me either, because when I saw them you could see the startled expression on their faces.

"Q. Do you recall positively that you lowered your window and put your hand out? A. And I looked *up* the street, if I had looked down I probably would have seen the boys.

"Q. Mrs. Bruskas, we don't think you did it on purpose. You admit though, that you cut the corner and did not look down Central before you turned, you admit that? A. Yes.

"Q. If you did not look down Central why did you stop to let the car in front of the motorcycle pass? A. Because I saw that one car, I did not see any more cars; I did not think it was necessary to look again."

A number of other witnesses testified that she "cut the corner" in making the turn; and as she, the only witness who could know, testified that she made the turn without looking west, and that if she had looked west she would have seen the boys going east on the motorcycle and admitted she "cut the corner"; and as there is no evidence to the contrary, and no reason appears why the court should not believe the undisputed testimony given by the witnesses for both parties—we find that the court erred in refusing the request.

Regarding that part of requested finding No. 9, refused by the court (supra), if the boys had gotten *past the center* of the intersection of Ash street and Central avenue when the automobile crossed the *center line* of Central avenue, then they were in less than 15 feet of the east line of Ash street and on the west side of Central avenue. They were traveling from 30 to 35 feet per second and the automobile at less that half that speed. Considering these facts, it is doubtful if the motorcycle could have been turned to the left in a fraction of a split second and avoided a head-on collision; or that the boys could not have passed in front of the automobile in safety if so far advanced into the intersection at the time Mrs. Bruskas crossed the center of Central avenue. Notwithstanding the testimony of witnesses as to such distance, there is substantial evidence to support the court's refusal to make the requested finding.

Regarding the requested finding No. 10, there is no definite testimony upon which the court could have found that "when Mrs. Bruskas turned left across Central Avenue the motorcycle was only 15 feet away."

In regard to requested finding No. 12, the evidence we have set out regarding requested finding No. 8 may be considered without reproducing it. From Mrs. Bruskas' testimony, alone, no other conclusion can be reached. She testified that her car came almost to a "complete stop" just before she made the turn without looking west, and she drove across the lane of eastbound traffic without a glance to see if there were more cars or other vehicles coming toward her. She testified she probably could have seen the motorcycle if she had looked west. Her car was facing west and the motorcycle was coming east, not far off, and nothing appears in the evidence to show her view was obstructed. It is proper to infer that had she looked down the street before making the turn she would have seen the motorcycle which, according to the facts, must have been but a short distance away.

Requested finding No. 21 is contradicted by the testimony of Mrs. Bruskas, and therefore its denial by the trial court will not be disturbed.

It is error for a trial court to refuse to make a finding of fact requested by a party to the suit, which is abundantly supported by the uncontradicted testimony, and particularly by that of the principal witness and wife of the opposing party, against whom the finding would operate. Kennedy v. Porter et al., 109 N.Y. 526, 17 N.E. 426; Post v. Hartford Street Ry. Co., 72 Conn. 362, 44 A. 547; Alexandre v. Machan, 147 U.S. 72, 13 S.Ct. 211, 37 L.Ed. 84, 85; Bedlow v. New York Floating Dry-Dock Co., 112 N.Y. 263, 19 N.E. 800, 2 L.R.A. 629.

The question raised is one of law equally with one upon the question of whether a finding of fact is supported by substantial evidence.

The question now presented is whether the findings of the trial court, supplemented by appellant's requested findings that should have been approved by the trial court, will

support a judgment. State ex rel. McFann v. Hately, 34 N.M. 86, 278 P. 206, Op. by Justice Sims.

■ If the facts found by the court, supplemented by those he should have found, will support a judgment for appellant, then the case should be reversed.

The following state statutes were in force at the time of this accident and are applicable:

"* * * the driver of a vehicle * * * when intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest to the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left. For the purpose of this section, the center of the intersection shall mean the meeting point of the medial lines of the highways intersecting one another." Section 11-816 N.M.Comp.St.1929.

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to make such movement.

"(b) The signal herein required shall be given either by means of the hand and arm in the manner herein specified, or by an approved mechanical or electrical signal device, except that when a vehicle is so constructed or loaded as to prevent the hand and arm signal from being visible both to the front and rear the signal shall be given by a device of a type which has been approved by the department.

"Whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to start, stop or turn by extending the hand and arm horizontally from and beyond the left side of the vehicle." Section 11-817 N.M. Comp.St.1929.

"(o) 'Highway.' Every way or place of whatever nature open to the use of the public, as a matter of right, for purposes of vehicular travel." Section 11-801, N.M. Comp.St.1929.

■ The findings that should have been made by the trial court established negligence per se on the part of Mrs. Bruskas, in that she "cut the corner" or failed to pass beyond the center of the intersection of the highways before turning, and failed to see that she could turn across the lane of eastbound traffic with safety, each of which acts violated a state statute. Pettes v. Jones, 41 N.M. 167, 66 P.(2d) 967; Towne v. Godeau, 70 Cal.App. 148, 232 P. 1010; Pettera v. Collins, 203 Wis. 81, 233 N.W. 545; Mertens v. Lake Shore Y. C. & T. Co., 195 Wis. 646, 218 N.W. 85; Thieme v. Weyker, 205 Wis. 578, 238 N.W. 389; Geisen v. Luce, 185 Minn. 479, 242 N.W. 8; Abel v. Gulf

Refining Co. (La.App.) 143 So. 82, and Id. (La.App.) 138 So. 708; Catalano v. Pritchard, 19 La.App. 262, 140 So. 100.

There must not only have been negligence on the part of Mrs. Bruskas, but such negligence must have been the proximate cause of the death of plaintiff's intestate. Appellant made no request of the court for a finding on the question of proximate cause and none was made.

 The Frank boys had a right to assume that Mrs. Bruskas would obey the statutes we have quoted; and if the collision (which the court found caused the death of Claire Frank) resulted from her negligent act in cutting the corner, or failing to signal, or neglecting to look and ascertain that she could turn into Ash street across the lane of eastbound traffic on Central avenue with safety to those using it, then her negligence was the proximate cause of Claire Frank's death. Towne v. Godeau, supra.

The "proximate cause" of an injury is "the 'cause which, in natural and continued sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which that result would not have occurred.'" Gilbert v. New Mexico Construction Co., 39 N.M. 216, 44 P.(2d) 489, 490. It is an ultimate fact, and is usually an inference to be drawn by the jury from the facts proved. It only becomes a question of law when the facts regarding causation are undisputed and all reasonable inferences that can be drawn therefrom are plain, consistent, and uncontradictory.

"The question of proximate cause is usually for the jury upon all the facts. Proximate cause is said to be a mixed question of law and fact which must be submitted to the jury under proper instructions. But where the facts are undisputed and the inferences to be drawn from them are plain and not open to doubt by reasonable men, it is the duty of the court to determine the question as a matter of law." 1 Cooley on Torts (4th Ed.) 50; Hellan v. Supply Laundry Co., 94 Wash. 683, 163 P. 9.

 Appellant made no request of the court to find the amount of damage sustained by appellant. This is likewise a question of fact to be inferred from all the pertinent facts proved; the principal ultimate fact to be established, and its determination, is the province of the jury or court trying the case. It does not become a question of law unless the amount of damage is plain, certain, and definite, so that only a certain, specific sum would be consistent with the facts; and that is not the case here. Appellant should have requested a finding of the amount of such damage, assuming the liability of defendants.

 We are requested by appellant to determine the case in this court. It is argued that if any of the requested findings should have been made by the district court, then they may be supplied by this court and judgment entered or ordered thereon. This court, however, is not authorized to make such findings, nor draw inferences therefrom. That is peculiarly the province of the district court. But in any case the facts

found by the court, supplemented by those we hold he should have made, would not authorize us to enter judgment for appellant.

We cannot say, as a matter of law, that the negligent act of "cutting the corner" by Mrs. Bruskas, in turning off of Central avenue, into Ash street, or her failure to look for eastbound traffic, was the proximate cause of the accident resulting in Claire Frank's death.

It is not enough to find that the collision which resulted in Claire Frank's death would not have occurred except for Mrs. Bruskas' negligence, as we have held the court should have found; but the court must have further found that one of these acts of negligence, unbroken by any intervening cause, produced the result; and no such finding was made or requested, and we cannot supply it.

Likewise we are not authorized to determine the amount of damage from the evidentiary finding of the district court by which no specific amount is established.

The case was not determined upon its real facts; therefore it may be stated that a judgment was entered upon an unauthorized state of facts. This will not justify us in reversing the case, however, unless the facts found by the court, supplemented by those he should have found, will support a judgment for appellant. State ex rel. McFann v. Hately, supra.

We cannot determine what the attitude of the district court would have been had he adopted requested findings Nos. 8 and 12, which we hold he should have done. In other words, he has not passed upon the case, and if, under any circumstances, these facts would support a judgment in appellant's favor, the cause should be reversed that the district court may have an opportunity to pass upon the question.

In determining this issue we must look at the case from appellant's standpoint; that is, assuming that the district court had entered judgment for appellant under this different state of facts, would such judgment be sustained in this court?

The findings must sustain the judgment of course, but they are to receive such construction as will uphold rather than defeat the judgment; and if from the facts found the other necessary facts to support the judgment may be reasonably inferred, it will not be disturbed by us. Paine et al. v. San Bernardino, etc., Co., 143 Cal. 654, 77 P. 659; Perkins v. West Coast Lumber Co., 129 Cal. 427, 62 P. 57; Lynch's Adm'r v. Murray, 86 Vt. 1, 83 A. 746; Wood v. City of Montpelier, 85 Vt. 467, 82 A. 671, Ann.Cas.1914D, 500.

"As to the first objection, it may be said that it was decided in Fraser v. State Savings Bank, 18 N.M. 340, 137 P. 592, 594, that:

" 'Findings are not to be construed with the strictness of special pleadings. It is sufficient if, from them all, taken together with the pleadings, the court can see enough upon a fair construction to justify the judgment of the (trial) court, notwithstanding their

want of precision and the occasional intermixture of matters of fact and conclusions of law.'

"While it is the better practice for the court to find conclusions of fact and law separately, failure to do so is not ground for reversal, unless appellant has been prejudiced thereby. See Monaghan Bay Co. v. Dickson, 39 S.C. 146, 17 S.E. 696, 39 Am.St. Rep. 704; 8 Standard Encyclopedia of Procedure, 1020. Appellant has not shown any prejudice resulting to it from the findings being objectionable as to form, if in fact they are so objectionable." La Luz Community Ditch Co. v. Town of Alamogordo, 34 N.M. 127, 279 P. 72, 75.

It may be reasonably inferred from the facts found, that appellant was damaged in some amount; and likewise it may be reasonably inferred from the facts surrounding Mrs. Bruskas' negligent acts, that such negligence was the proximate cause of the injury. The parties were approaching each other, each on the proper side of the street, and when each was approaching the intersections of Ash street, Mrs. Bruskas, without blowing her horn, or looking for oncoming vehicles, "cut a corner" and turned across the lane of traffic, which placed her car in the way of the motorcycle. These facts are sufficient from which the court might infer that one or more of her several negligent acts was the proximate cause of the death of Claire Frank.

The district judge who heard the case is not available for the purpose of another trial, so it will be necessary to reverse the case for a retrial of certain issues.

The cause will be reversed and remanded, with instructions to grant a new trial; that such trial, in the court's discretion, may be limited to the issues of the proximate cause of the death of Claire Frank and the consequential damages if any; that the court make his findings and conclusions thereon, and from all the facts found and to be found, enter judgment.

It is so ordered.

HUDSPETH, C. J., and SADLER and ZINN, JJ., concur.

BICKLEY, J., did not participate.